Frances **WILCZYNSKI**, Esta Watson, on behalf of themselves and all others similarly situated

v.

John **HARDER**, Individually, and as Commissioner of Welfare, State of Connecticut.

Civ. No. 13382.

United States District Court, D. Connecticut.

Feb. 16, 1971.

Laurens H. Silver, Malvina Guggenheim, Mark Edelstein, Los Angeles, Cal., National Legal Program on Health Problems of the Poor, amicus curiae.

Robert P. Borsody, New York City, Center on Social Welfare Policy and Law, amicus curiae.

Kenneth R. Kreiling, New Haven, Conn., amicus curiae.

William H. Clendenen, Jr., Steven P. Floman, John H. Doermann, David M. Lesser, New Haven, Conn., for plaintiffs.

James M. Higgins, Asst. Atty. Gen., East Hartford, Conn., for defendant.

Before ANDERSON, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

### I.

### *Facts*

The facts of this case have been stipulated by the parties and may be simply stated. Plaintiff Wilczynski is a 75 year old woman in poor health who has for some time been a recipient of medical assistance under the provisions of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396g. (Sometimes hereinafter referred to as "Title XIX assistance" or "Medicaid.") [1] Her sole source of in-

---

1. The Medicaid legislation creates a comprehensive cooperative federal-state program for medical care. Federal grants are authorized to participating states for their medical assistance programs if they submit a state plan comporting with federal requirements. Participation in the federal program is voluntary, but if a state elects to participate, as Connecticut has, Conn.Gen.Stats. § 17–134a. it must comply with the requirements of the federal statutes and regulations to remain eligible for federal funds. The administrative scheme is similar to that of the Aid to Families with Dependent Children (AFDC) program described in King v. Smith, 392 U.S. 309, 316–317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

For a general discussion of the statutory and regulatory scheme underlying Medicaid, see L. Silver & M. Edelstein, "Medicaid: Title XIX of the Social Security Act—A Review and Analysis—Part I," 4 Clearinghouse Review 239 (Oct.

come is social security, from which she receives $85.90 per month. Her sole assets are two life insurance policies with a combined face value of $1,000.00 and cash surrender value of about $700.00. Plaintiff Watson is a 36 year old woman who is permanently and totally disabled. Like Mrs. Wilczynski, she has been receiving Title XIX medical assistance for several years. Similarly her sole source of income ($149.00 per month) is social security, and her sole asset is an insurance policy of $1,000.00 face value and approximately $230.00 cash surrender value.

Both plaintiffs have been notified by the defendant [2] that by reason of a change in the resource limitation for Connecticut's Medicaid program, they will no longer be eligible to receive medical assistance unless and until they use up their resources in excess of the new limitation. They brought this class action [3] to challenge on both constitutional and statutory grounds, the validity of the Connecticut Welfare Department regulation (1 Conn.Welfare Man. § D–244.1 (1970)) promulgating that new limitation. The regulation is set out in the margin.[4] Plaintiffs seek by this ac-

1970). More detailed consideration of specific federal requirements which affect this case appears *infra* at 515–519.

2. States participating under Title XIX administer their own medical assistance programs. Defendant Harder, as Welfare Commissioner, is charged with the administration of the Medicaid program in Connecticut. Conn.Gen.Stats. § 17–134a.

3. Plaintiffs purport to represent "all other present or potential recipients of medical assistance under the Title XIX Program who are similarly situated." (Plaintiffs' Second Amended Complaint ¶ 4). We hold this case is properly a class action insofar as the class is limited to those present recipients of Medicaid whose benefits will be terminated, or applicants for Medicaid who are found to be financially ineligible, solely because the face value of their life insurance renders their assets excessive of the eligibility limits set by the regulation challenged by this suit. Defining the class in that way, it is apparent that this action meets the prerequisites for a class action established by Fed.R.Civ.P. 23. *See* Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). The requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b) (2). McClellan v. Shapiro, 315 F.Supp. 484, 486 n. 1 (D.Conn.1970); Doe v. Shapiro, 302 F.Supp. 761, 762 n. 3 (D.Conn. 1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677, reh. denied, 397 U.S. 970, 90 S.Ct. 991, 25 L.Ed.2d

264 (1970); Solman v. Shapiro, 300 F. Supp. 409, 411 n. 1 (D.Conn.), aff'd. 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). Because this action falls within subsection (b) (2), the notice requirements set out in subsection (c) (2) are inapplicable. *See Id.*

4. 1 Conn.Welfare Man. § D–244.1 (1970) provides:

"*Eligibility. Financial.* Except when financial eligibility for medical assistance is otherwise established by statute or regulation, any person shall be eligible for medical assistance who has income and resources at or below the levels set forth below. As used in this section, 'resources' shall not include real property used as a home, reasonable personal and household effects, an automobile essential for transportation, or United States Government Veterans' life insurance.

"*Gross Income Levels*

\*        \*        \*        \*        \*

"*Maximum Resource Levels*

| Size Family | Resources |
|---|---|
| One person | $250 |
| Two persons | $500 |
| (a married couple or an adult and a dependent child under 21) | |
| Each additional dependent family member in the home | $100 |

"An MA beneficiary who is categorically related to OAA, AB or AD may have resources up to but not exceeding six hundred dollars in addition to the two hundred and fifty dollars, such additional amount to serve as a burial reserve which shall be in the form of a prepaid funeral contract with a funeral director licensed to enter into such contract, or a deposit in trust therefor with someone independent of the commissioner, or an insurance

tion a declaration of its invalidity and an injunction against its enforcement.

## II.

### *Jurisdiction*

Plaintiffs rely on their constitutional claim to support jurisdiction in the federal court. That claim can be briefly stated. The challenged regulation (sometimes hereinafter referred to as "§ 244.1") excepts from inclusion in the sum of an applicant's total resources "real property used as a home, * * * an automobile essential for transportation, or United States Government Veterans' life insurance." [5] Plaintiffs claim this provision of the regulation creates an arbitrary distinction between two classes of Medicaid applicants on grounds wholly irrelevant to eligibility for medical assistance. Specifically, they contend, the regulation renders them ineligible, while others, with equal or greater assets, may, provided they have invested their resources in the right kind of assets, remain eligible. For purposes of eligibility for Medicaid, plaintiffs argue, no rational distinction can be drawn between the two classes; and consequently plaintiffs are by application of the regulation denied equal protection of the laws. Plaintiffs allege that this suit is authorized by the Civil Rights Act, 42 U. S.C. § 1983,[6] and that a jurisdictional basis is provided by 28 U.S.C. § 1343(3).[7]

The hitherto troublesome problems of fitting all welfare cases within § 1343(3)'s judicial limitation to cases where "the right or immunity [allegedly infringed] is one of personal liberty, not dependent for its existence upon the infringement of property rights," Hague v. CIO, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (opinion of Mr. Justice Stone); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); *see, e. g.,* Campagnuolo v. Harder, 319 F.Supp. 414 (D.Conn.1970); McClellan v. Shapiro, 315 F.Supp. 484 (D.Conn.1970) (three-judge district court), have now been resolved for the district courts in this circuit.[8] In Johnson v. Harder, 438 F.2d 7, (2d Cir. 1971),[9] rev'g 318 F. Supp. 1274 (D.Conn.1970), the court analyzed the recent Supreme Court welfare cases [10] and concluded they were rec-

---

policy of not more than six hundred dollars face value payable to the insured's estate or a selected funeral director. "Any otherwise eligible person having income or resources above said levels shall be eligible for medical assistance after the excess has been first used to defray medical expenses."

5. The regulation, *see* n. 4, *supra*, also excepts "reasonable personal and household effects." Plaintiffs apparently have no quarrel with that exception.

6. 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

7. Section 1343(3) provides federal jurisdiction for civil suits authorized by law

"to redress the deprivation, under color of any State * * * regulation * * * of any right, privilege or immunity secured by the Constitution of the United States * * *." It also provides jurisdiction for similar suits alleging deprivations of rights secured by "any Act of Congress providing for equal rights of citizens * * *." The Social Security Act, however, is not such an Act. *See* McCall v. Shapiro, 416 F.2d 246, 249 (2d Cir. 1969).

8. Sitting as a district court, this panel is bound by decisions of the court of appeals for this circuit. Lewis v. Rockefeller, 431 F.2d 368, 371 (2d Cir. 1970).

9. Part of the unusual delay in rendering a decision in the instant case was occasioned by this court's election to await the result of the *Johnson* case on appeal to the court of appeals.

10. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25

oncilable with the Stone formula on the following grounds:

"Since welfare cases by their very nature involve people at a bare subsistence level, disputes over the correct amounts payable are treated not merely as involving property rights, but some sort of right to exist in society, a personal right under the Stone formula." *Id.* at 12.

The court held that in welfare cases of this type, "so long as a colorable constitutional claim has been raised, jurisdiction will properly lie." *Id.* at 12.

■ Plaintiffs' constitutional claim before this court is at least colorable. It is not "obviously without merit" nor does "its unsoundness so clearly result from the previous decisions of [the Supreme Court] as to foreclose the subject." California Water Serv. Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938). *Cf.* Dandridge v. Williams, *supra*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; Rosado v. Wyman, *supra*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442; Johnson v. Harder, *supra*, 438 F.2d at 12. Because plaintiffs seek an injunction against the enforcement of a regulation of statewide application, on constitutional grounds that are not unsubstantial, a three-judge district court was convened pursuant to 28 U.S.C. § 2281 to hear and decide the issues presented.

## III.

### *Statutory Claims*

■ In addition to their equal protection claim, plaintiffs contend that the state regulation is invalid because antithetical to the Social Security Act and regulations promulgated thereunder.[11] Having jurisdiction over plaintiffs' constitutional claim, this court may also exercise pendent jurisdiction over the statutory claims. Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970); Rosado v. Wyman, *supra*, 397 U.S. at 402, 90 S.Ct. 1207; King v. Smith, *supra*, 392 U.S. at 312 n. 3, 88 S.Ct. 2128. *Rothstein* requires the court to consider the statutory claims for relief prior to reaching the constitutional issues.

### A. *The Federal Statutory Scheme—Eligibility Provisions*

A brief description of the relevant statutory scheme[12] for Medicaid will serve to provide a context within which to later consider the specific conflicts alleged. The Medicaid program cuts across the four categorical public assistance programs to meet a special need common to all.[13] There are three different classes of eligible recipients provided for by Title XIX:

(1) The first class is composed of those receiving aid under any of the four categorical assistance programs, *viz*, the programs for assistance to the aged (OAA), the blind (AB), the disabled

---

L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

11. *Cf.* King v. Smith, *supra*, 392 U.S. at 317, 88 S.Ct. 2128. The regulations issued by the Secretary of Health. Education & Welfare (HEW) to govern administration of the Title XIX program are contained in Supplement D to the Handbook of Public Assistance Administration (hereinafter cited "HPAA").

12. For a brief survey of the whole statutory scheme, including those parts described herein, *see* Silver and Edelstein, *supra*, 4 Clearinghouse Review at 251–52.

13. Title XIX was enacted "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or permanently and totally disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care * * *." 42 U.S.C. § 1396.

(AD), and families with dependent children (AFDC). 42 U.S.C. § 1396a(a) (10). HPAA, Supp. D, § D–4020(1) (a). Neither plaintiff being a beneficiary under any of these programs, eligibility is not claimed under this section.

(2) Secondly, the state *must* provide assistance to persons who would be eligible for aid under one of the categorical programs listed in (1) above but for state eligibility requirements applicable to those programs which are at the same time specifically prohibited as eligibility requirements for Title XIX assistance. HPAA, Supp. D, §§ D–4020(c), D–4030 (b). Persons in these first two classes are called "categorically needy." HPAA, Supp. D, § D–4020. Plaintiff Wilczynski claims eligibility for Medicaid as a categorically needy person because she would be eligible for OAA but for her refusal to assign her life insurance to the Welfare Commissioner—an eligibility requirement for OAA [14] but prohibited as an eligibility requirement for Medicaid. *See* 42 U.S.C. §§ 1396a(a) (17) (D) and (a) (18). HPAA, Supp. D, §§ D–4000 (1) (c), D–4020(1) (c), and D–5700.

(3) Thirdly, the state *may* (and Connecticut does—Conn.Welfare Man.Supp. D, § D–230; Conn.Regs. § 17–134d–1) provide medical assistance to those who are related to the categorical programs (i. e., by being old, or disabled, or blind, or having dependent children) but whose incomes and/or assets exceed the eligibility limits of the appropriate category. 42 U.S.C. § 1396a(a) (10) (B). HPAA, Supp. D, §§ D–4000(A) (2) (b) (1), D–4020.2(b). When their income and/or assets are nevertheless not adequate to pay for their medical care, they may qualify for assistance as "medically needy" persons. It is in this third class that plaintiff Watson claims to be because she is permanently and totally disabled and her income slightly exceeds that for AD assistance, but is insufficient to meet her medical needs.

Under Title XIX, the state may determine the income and asset limitations for eligibility so long as the limits are reasonable. HPAA, Supp. D, § D–4240(A) (5). The state may not consider income or assets not actually available to the applicant, 42 U.S.C. § 1396a(a) (17) (B), assets must be reasonably evaluated, 42 U.S.C. § 1396a(a) (17) (C), and the limitation must at a minimum be at the most liberal level used in any money payment program in the state on or after January 1, 1966. 45 C.F.R. § 248.21(a) (1) (iv).[15]

B. *Connecticut's Eligibility Limits for Medicaid—1 Conn. Welfare Manual § 244.1 (1970)*

Section 244.1 sets out the income and resource limitations for eligibility for Medicaid in Connecticut.[16] *See* n. 4, *supra*. A single beneficiary may have up to $250.00 liquid assets and in addition thereto the "categorically needy" and "medically needy" may retain up to $600.00 in a burial reserve. The latter may be in the form of a prepaid funeral contract with a funeral director, a trust fund for burial with someone other than the commissioner, or an insurance policy of not more than $600.00 face value payable to the insured's estate or a funeral

---

14. *See* Conn.Gen.Stats. § 17–114(a). Plaintiffs' Second Amended Complaint, particularly ¶¶ 3, 17, 18 and ¶ 3B of the prayer for relief, appears to raise a constitutional challenge to this statute, which relates only to eligibility for categorical programs other than Medicaid. We do not have to decide whether such a challenge is appropriate in the context of this case, however, since plaintiffs have apparently abandoned their challenge. No reference to this statute appears anywhere in plaintiffs' briefs and no refer-

ence is made to it in the "Stipulation of Facts and Issues."

15. *See generally*, for a discussion of income and resource eligibility requirements for Medicaid, Silver and Edelstein, "Medicaid: Title XIX of the Social Security Act—a Review and Analysis—Part II," 4 Clearinghouse Review 305–07 (Nov. 1970).

16. Since the income limitations are concededly not in issue, the only provision relevant for purposes of this case is that which sets out the resource limits.

director. A recipient may also have, without limitation as to value, a home, a car, United States Government Veterans life insurance, and reasonable personal and household effects.[17]

## C. *Claims of Statutory Conflict*

### 1. *The Lien Prohibition*

■ The federal statute prohibits the state from imposing as a condition of eligibility for Medicaid any "lien * * * against the property of an individual prior to his death on account of medical assistance paid or to be paid on his behalf under the plan * * *." 42 U.S.C. § 1396a(a) (18). Plaintiffs contend that the burial reserve provision of § 244.1 applicable to a limit of $600.00 of assets in excess of $250.00 is just such a lien and, therefore, an impermissible condition of eligibility.

There is no question but that the disputed burial reserve is a lien as defined by the federal regulations. *See* HPAA, Supp. D, § D–5730 ("all encumbrances * * * made during his lifetime * * * which would prevent an individual from freely transferring or otherwise disposing of his property"). The critical question is whether it is imposed "on account of medical assistance paid or to be paid on his behalf under the plan." We think not.

■ Although the meaning of the phrase "on account of" as used in the statute is not entirely free from doubt, it would seem to us that the most obvious meaning is to prohibit state provisions designed to recoup state money spent on medical payments made pursuant to the plan, not those designed to protect the state against other kinds of expense such as that for the burial of paupers. The same sentence in the statute which imposes the lien prohibition also prohibits any "adjustment or recovery (with some exceptions not here relevant) of any medical assistance correctly paid on behalf of [any] individual under the plan." 42 U.S.C. § 1396a(a) (18). This strengthens the view that the concern of Congress was with state efforts (either by lien on the recipient's property or direct action against him) to require the recipient, where possible, to make restitution of moneys spent on his behalf under the Title XIX program. *See also*, HPAA, Supp. D, § D–5720, and Conn. Regs. § 17–134d–4 (which explain that the statute prohibits liens imposed "because of" medical payments made under the plan) and HPAA, Supp. D, § D–5730 (which explains that the prohibition does not apply where a recipient voluntarily initiates and makes repayment for medical assistance provided under the plan).

By providing that eligibility is not impaired if assets above $250.00 and up to $850.00 are earmarked for burial, Connecticut has not imposed a lien designed to recoup moneys spent for medical assistance.[18] Rather this provision operates to protect the state against costs for burial of paupers. *See* Conn.Gen. Stats. § 17–286 (which requires the appropriate public official to provide an indigent person with "a proper burial," the cost of which is not to exceed $600.00). Accordingly, we find the burial reserve requirement outside the scope of the federal lien prohibition and not in conflict with it.

---

17. Prior to 1969, the resource level for Medicaid eligibility was $1400.00. Conn. Gen.Stats. § 17–134c. This was repealed by the Connecticut General Assembly, Public Act 730, § 40 (1969), without substitute legislation. After some interim changes (*see* Plaintiffs' brief at 20 n. 18), the limitation in its present form was promulgated on January 27, 1970, and filed as a regulation on May 1, 1970, with the Secretary of State.

18. Compare the lien provision contained in Connecticut's OAA program, Conn. Gen.Stats. § 17–114(a), which authorizes the commissioner to require assignment of a beneficiary's assets to be used under specified circumstances "to reimburse the state for all grants of assistance under this chapter." The same statute also provides for a burial reserve of the type at issue in the Medicaid eligibility regulation, indicating that the legislators considered they were dealing with liens for two separate purposes.

### 2. Reasonable Evaluation of Assets Actually Available

█ Plaintiffs contend that the state's valuation of their insurance policies at face value rather than cash surrender value conflicts with the federal requirement that in determining eligibility for Medicaid the state must reasonably evaluate an applicant's assets and consider only those actually available to him. 42 U.S.C. § 1396a(a) (17) (B) and (C). They reason that nothing above the current cash value of their policies can be applied by them to meet their medical and other needs.

The Supreme Court has three times struck down state attempts to attribute to applicants for public assistance income or resources not shown to be actually available to them. Lewis v. Martin, *supra*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed. 2d 561; Solman v. Shapiro, *supra*, 300 F.Supp. 409 (D.Conn.), aff'd, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969); King v. Smith, *supra*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. In each case, the state requirement was found to conflict with federal statutes and/or regulations. In the *instant case*, plaintiffs do not contend that their insurance policies are not available assets, only that they are not worth as much to them for purposes of meeting their present needs as the state contends. Hence they are not reasonably evaluated as required by the federal statute.

Plaintiffs' position is demonstrably correct. Reasonable evaluation of available assets in the context of eligibility for public assistance must have reference to evaluation for purposes of meeting those present needs for which assistance would otherwise be provided. *See* HPAA, Supp. D, § D–4230.4 (to be available, resources must be "in hand" or "under the control of the individual"). Any other measurement of value, e. g., the future value to a recipient's estate of a life insurance policy, is irrelevant to whether a recipient can meet out of his own assets his present subsistence needs. We conclude, therefore, that § 244.1, insofar as it requires evaluation of life insurance policies at face value, conflicts with the federal statute and is, therefore, invalid. The value of plaintiffs' insurance policies, for purposes of Title XIX eligibility, is their cash surrender value.

### 3. Minimum and Reasonable Asset Limitation

█ Plaintiffs' final statutory argument is that Connecticut's asset limitation on Medicaid eligibility, as set by § 244.1, is not, as required by 45 C.F.R. § 248.21(a) (1) (iv), "at the most liberal level used in any money payment program in the State on or after January 1, 1966." The parties agree that the standard against which to measure § 244.1 in this respect is § 323 of the Connecticut Welfare Manual, specifically the resource limitations it sets for eligibility for participation in the OAA, AB, and AD programs. They do not agree, however, on how to interpret that section.

Section 323 is not an easily understandable regulation.[19] We find however

---

19. In relevant part, § 323 provides as follows:
  "*Personal Property Requirements*
  "A. *Limitation on Ownership of Personal Property*
  "Ownership of personal property including the total cash value of insurance is limited to six hundred ($600) dollars in all categories of assistance * * *. This limitation applies to any one or a combination of the kinds of personal property listed under Index No. 321, Item A, with the following two exceptions applicable only to the OAA, AB and AD programs.

  "1. When cash value in insurance exceeds six hundred ($600) dollars *but does not exceed* $1300, the OAA, AB and AD applicant is * * * permitted to retain the insurance and * * * be granted assistance *provided* both of the following conditions are met:
  "a) All insurance so retained will be assigned to the Welfare Commissioner * * *.
  "b) All other personal property holdings, exclusive of a prepaid funeral arrangement which are subject to consideration in relation to the six hundred

that the most liberal level of assets allowed by its terms is not more than that allowed by § 244.1; that is, $250.00 liquid assets and an additional $600.00 burial reserve. Accordingly, we find that § 244.1 conforms to federal standards in that regard.[20] We are not persuaded by plaintiffs' argument that § 323 permits retention of unencumbered life insurance having a cash value up to $1300.00. Retention of an insurance policy carrying that cash value is conditioned by § 323 upon its prior assignment to the Welfare Commissioner. Arguing that under Title XIX that requirement would be regarded as a prohibited lien, plaintiffs' claim that for purposes of determining the minimum asset limitation for Medicaid the state is forced to accept § 323's provision for $1300.00 of life insurance without its accompanying assignment requirement. This reasoning of course is patently fallacious. Requiring the state to allow Medicaid recipients to retain at least $1300.00 in life

insurance without encumbrance would be to require it to set a resource limit for Title XIX eligibility far more liberal than that used in the most liberal money payment program in the state.[21] That is not required by 45 C.F.R. § 248.21(a)(1)(iv).

### 4. *Summary*

Connecticut's eligibility provision for Medicaid, § 244.1 of the Connecticut Welfare Manual, to the extent it is challenged by these plaintiffs, does not conflict with the federal statute or regulations except insofar as it requires the defendant to value insurance policies at face value. We hold the federal statute, 42 U.S.C. § 1396a(a)(17)(C), requires the defendant to consider the cash surrender value of life insurance policies as their value for purposes of Medicaid eligibility.

As a consequence of that holding, it is apparent first that Mrs. Watson, whose

---

($600) dollars limitation, will be liquidated by the applicant and the proceeds used for self-support before an award will be authorized.

\*　　\*　　\*　　\*　　\*

"2. Prepaid funeral arrangements can be retained which together with other personal property does not exceed a total of six hundred ($600) dollars.

"A prepaid funeral arrangement in an amount up to but not exceeding \* \* \* six hundred ($600) dollars if established *prior* to October 1, 1963 can be included with the cash value of insurance provided the combined value will not exceed thirteen hundred ($1300) dollars and the conditions enumerated above are met.

\*　　\*　　\*　　\*　　\*

"B. *Assignment and/or Transfer of Personal Property to the Welfare Commissioner*

"All personal property in excess of two hundred fifty ($250) dollars and subject to inclusion in the determination of eligibility for OAA, AB and AD with regard to the personal property limitation \* \* \* must be assigned or transferred to the Welfare Commissioner as a condition of initial or continuing eligibility with the following exceptions:

"1. If the personal property consists solely of life insurance with a *claim*

value in excess of two hundred fifty ($250) dollars, the life insurance must be assigned.

"2. If the OASDI death benefits (three times monthly primary benefit) together with *claim* value of insurance exceeds two hundred fifty ($250) dollars, insurance must be assigned.

"3. United States Government Veterans Life Insurance is not assigned."

20. We note at this point that HEW expects some play to be exercised in this aspect of the states' administration of the Medicaid program. HPAA, Supp. D, § D-4240(A)(5) provides in part:

"The fact that the individual has property, reasonably valued, in excess of the State's established limit on such resources, does not arbitrarily exclude an individual from receiving medical assistance. When medical costs exceed the excess value of an available resource, the State agency may pay for medical assistance above the excess value. It is not expected that a State will require liquidation of such resources where their value is not greatly in excess of the State's established limit."

21. Plaintiffs do not specifically contend that the resource limit of § 244.1 is not reasonable, as required by HPAA, Supp. D, § D-4240(A)(5).

only asset is her insurance policy with a cash value of less than $250.00, is entitled to retain that policy free and clear of any encumbrance and remain eligible for medical assistance. Mrs. Wilczynski presents a different situation. The value of her two life insurance policies exceeds $250.00 but not $850.00. Accordingly, while she may retain those assets, the state may require a burial reserve on the amount in excess of $250.00. The mechanics of accomplishing that result we leave to the parties.

Mrs. Wilczynski, of course, might be afforded more complete relief if her constitutional claim were sustained by the court. Consequently, we next consider the merits of that claim.

D. *The Constitutional Claim*

As noted earlier, plaintiffs' constitutional claim is that Connecticut's eligibility standards, as expressed in § 244.1, violate their fourteenth amendment right to equal protection of the laws. Specifically they challenge the permitted exemptions from resources taken into account in determining eligibilty. Exemptions are allowed for the recipients' home and car, of any value, and United States Government life insurance. *See* n. 4, *supra*. Plaintiffs argue that those exemption provisions create two distinct classes of Medicaid recipients based on the kind of assets they hold, and discriminates against those who do not have enough to invest in the exempted class of assets.

Initially, we note that the traditional equal protection test, requiring only that the legislative classifications to be valid have some "reasonable basis," is applicable in this case. Dandridge v. Williams, *supra*, 397 U.S. at 484–486, 90 S.Ct. 1153, 25 L.Ed.2d 491; McClellan v. Shapiro, *supra*, 315 F.Supp. at 490–491. The traditional test was recently stated by the Court in McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969):

"The distinctions drawn * * * must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal."

The state contends in its brief that the end to be served by the challenged legislation is "to conserve the finite resources of the State of Connecticut and spread them amongst the greatest number of potentially eligible beneficiaries * * *." (Defendant's brief at 7). In discharging "the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients," Dandridge v. Williams, *supra*, 397 U.S. at 487, 90 S.Ct. at 1163, the state "has a valid interest in preserving the fiscal integrity of its programs," Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969), and "may legitimately attempt to limit its expenditures * * * for public assistance." *Id.* There is no doubt then that § 244.1 setting resource limitations for Title XIX eligibility is designed to achieve a legitimate state end. The next question is whether the specific means chosen to attain that end are rationally related to its attainment. "The saving of welfare costs cannot justify an otherwise invidious classification." *Id.* (footnote omitted).

The state advances no specific justifications for the exemptions allowed by § 244.1. Nevertheless, we are not foreclosed from ascertaining their purpose from the terms and context of the regulation and the legal and practical objectives which can reasonably be imputed to it. *Cf.* Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed. 2d 1435 (1960); Goesaert v. Cleary, 335 U.S. 464, 466–467, 69 S.Ct. 198, 93 L.Ed. 163 (1948). From that perspective, it is apparent that a rational basis does exist for the exemptions of "real property used as a home * * * [and] an automobile essential for transportation." It is certainly rational for a state, whose goal is fair allocation of limited welfare funds, to allow those public assistance applicants who already have provision for shelter to retain it, rather than require its divestiture and thrust upon

the state the added burden of providing substitute housing. The state in other words may rationally conclude that in most instances it is less costly to allow those otherwise eligible for assistance to keep their own homes, if they have them.

Similarly, while transportation may not be regarded as a bare necessity, its availability will in all likelihood greatly increase opportunities for employment. It is reasonable to assume, therefore, that the availability of transportation is reasonably related to the state's proper purpose of encouraging dependent citizens to become self-supportive. *Cf.* McClellan v. Shapiro, *supra*, 315 F.Supp. at 494.

■ We need not explore all possible justifications for the classifications created by the regulation; it is enough that one rational purpose is served. Dandridge v. Williams, *supra*, 397 U.S. at 486, 90 S.Ct. 1153. Nor do we pass on the wisdom of the challenged provision, or decide whether it "best fulfills the relevant social and economic objectives that [Connecticut] might ideally espouse * * *." *Id.* at 487, 90 S.Ct. at 1162. The absence of any limit on the value of a home or car which may be retained causes us some concern but we cannot say that failure to set any limit renders the exemptions unreasonable in light of the purposes for which they were created.

The provision exempting United States Government Veteran's life insurance stands on a somewhat different footing. The state contends that because insurance policies of that type are specifically made nonassignable except to certain specified members of the insured's family, *see* 38 C.F.R. §§ 6.62, 8.59, it cannot compel holders of those policies to comply with the burial reserve provisions of § 244.1. Accordingly, the state adopted the solution of wholly exempting those policies. While we enter-

tain some doubt about the state's conclusion that government insurance policyholders could not comply with the burial reserve provision applicable to assets in excess of $250.00, *see* 38 C.F.R. §§ 6.56, 6.60, 8.46, 8.47, there is an independent ground for upholding the classification.

■ United States Government life insurance for veterans was designed "to protect from financial hardship the surviving families of those who had served under the nation's flag." United States v. Henning, 344 U.S. 66, 71, 73 S.Ct. 114, 117, 97 L.Ed. 101 (1952). The enacting legislation was "plainly adopted for humane and patriotic reasons." Philippine Nat'l Bank v. United States, 112 U.S. App.D.C. 126, 300 F.2d 718, 720 (D.C. Cir. 1962). Insurance of that kind belonging to a veteran or his family is, therefore, of a decidedly different quality than ordinary life insurance.[22] Veteran's life insurance is, in the nature of a gift and is designed to confer a benefit and to recompense the veteran for his sacrifices in service to the country. *See* In re McCormick's Estate, 169 Misc. 672, 8 N.Y.S.2d 179, 183 (1938). In determining, therefore, what assets may be exempted from the accounting of an applicant's resources in judging eligibility for public assistance, there is a reasonable basis for treating this particular insurance differently from ordinary life insurance. Veterans and their families may constitute a particular class from whom it is permissible to distinguish others in many respects. *See, e. g.,* Bateman v. Marsh, 188 Misc. 189, 64 N.Y.S.2d 678, 683–685, aff'd 271 App. Div. 813, 66 N.Y.S.2d 411 (1946), aff'd, 296 N.Y. 849, 72 N.E.2d 30, 31 (1947). Consequently, we cannot say that the exemption of veteran's life insurance "rests on grounds wholly irrelevant to the achievement of the State's objective" or that no "state of facts reasonably may be conceived to justify it." McGowan v.

22. We note in passing that the face amount of veteran's life insurance (United States Government life insurance and/or National Service life insurance) which any one individual may hold is limited to at least $1000.00 and no more than $10,000.00. 38 U.S.C. § 703, 741.

Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

In conclusion, therefore, we find that § 244.1, to the extent it is challenged by these plaintiffs, meets the strictures of the equal protection clause. Accordingly, plaintiffs are entitled only to the relief required to rectify the state's improper valuation of their insurance policies. In all other respects, relief is denied.