Zella KIMMES, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 77–K–713.

United States District Court, D. Colorado.

July 3, 1979.

Lenny L. Croce, Golden, Colo., for plaintiff.

Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff was a recipient of Supplemental Security Income on the basis of her disability and low-income, from July 1975 to August 1976, when her benefits were terminated because of alleged in-kind income that placed her above the applicable income limits. The alleged in-kind income arose from plaintiff's housing situation. She lived, in her own household, in a small mobile home owned by her daughter, and for which plaintiff paid all of the expenses—the space rental, license, and taxes, totalling approximately $70 a month, and was responsible for all repairs and other current expenses. In relevant part, the Social Security Administration charged plaintiff with income because of its view that the rental value of the trailer was $150, and that since plaintiff only paid $70 a month,

she therefore had in-kind income amounting to $80 a month. Because of the applicable regulations at 20 CFR 416.1125, which sets a ceiling on countable in-kind income at one-third of the current standard payment amount (in 1976, $167.80) plus $20 (the monthly exclusion for unearned income), or $75.93, this lower figure was the amount applied as additional countable income received by plaintiff. On this basis, the Social Security Administration determined that plaintiff's total income placed her outside of Supplemental Security Income eligibility.

Having exhausted her administrative remedies, plaintiff seeks review here pursuant to 42 U.S.C. § 405(g), which gives the district courts jurisdiction to exercise review of Social Security Administration decisions. Applicable law is found in the Social Security Act, 42 U.S.C. §§ 1382 and 1382a, and 20 CRF 416.1101 *et seq.*, particularly § 416.1125.

Does a person who pays all existing shelter expenses receive in-kind income amounting to the difference between those expenses and current market value, where that shelter is owned by the recipient's daughter and provided to the recipient?

Both statute and regulation make in-kind income countable against an applicant's or recipient's eligibility or benefit level. Plaintiff's quarrel is not with this general proposition, and it is doubtful that it would be vulnerable to any sort of attack, as consideration of total income is central to all government benefit programs.

While plaintiff challenges the Social Security Administration's mode of evaluating in-kind income, the Social Security Administration's regulations are valid and generally consistent with the Social Security Act. In effect, those regulations set up a ceiling on the amount of in-kind income which can be imputed to an individual for the value of his or her support and maintenance (i. e., room and board), which equals one-third of the current standard payment (per month) plus the $20 exclusion for unearned income. 20 CFR 416.1125. Under applicable regula-

tion, a person may show that his or her actual in-kind income is less than this presumed value, so that the ceiling operates only to the benefit of the recipient, who can hardly claim injury on its account.

In light of the above, the central issue here is not whether in-kind income is countable or whether it should be valued in one way or another, but whether plaintiff in fact received in-kind income at all.

■ On the facts of this case, plaintiff did not receive in-kind income equal to the difference between her expenses and her household's current rental value. Where a recipient of government benefits lives in her own household and pays all expenses for doing so, no in-kind income is received on account of the difference between those expenses and the household's current rental value.

■ The law is clear that income, in-kind or otherwise, must be "actually available" to the welfare recipient in order for it to be counted against his or her eligibility or level of benefits. Numerous regulations that have presumed income or standardized certain expenses have been struck down by the courts as inconsistent with this principle. *See, e.g., Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975) (invalidating a New York regulation assuming lodger's contribution to welfare family's household expenses); *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974) (affirming a Tenth Circuit decision striking down a Colorado regulation that established a standard deduction for work-related expenses without providing that a recipient could show that his expenses were in fact greater than that presumed amount); *Green v. Barnes,* 485 F.2d 242 (10th Cir. 1973) (holding that the actually available resource of a welfare recipient's home is the amount of the recipient's equity and not the property's market value); *Wilczynski v. Harder,* 323 F.Supp. 509 (D.Conn. 1971) (holding that a life insurance policy must be valued at its cash surrender rather than face value).

At first blush, it appears that plaintiff would somehow receive some sort of economic benefit from living in the trailer owned by her daughter; that is, that it would cost her more, perhaps, to live in comparable housing elsewhere. However, no payments were made by the daughter on her behalf and plaintiff received no equity in the property. Instead, plaintiff paid all expenses related to her living in the trailer. In such a situation, it is incongruous to charge her with the trailer's market value, since that value is worth little to her, except perhaps as some indication of an improved living environment. First, as just mentioned, it is not a disposable asset which might itself provide plaintiff with income. Second, where a recipient purchases shelter on the open market, the difference between her actual payments and the shelter's current market value would surely not be considered income. Four examples illustrate this: (1) If a recipient found a bargain on the market and paid less than what otherwise might be charged, the difference in value should not be imputed to her as "income." (2) If a recipient has a year lease from January to December for $100 a month, and by October the rental value has increased to $150, to charge the recipient with additional income would not be permitted. (3) The same would apply where a person who owns his or her own household subsequently becomes disabled and eligible for disability benefits. Assuming that the recipient's equity is less than the limits on available resources, the recipient would not have income or a resource equal to the market value of the property. (The Tenth Circuit so held in *Green v. Barnes, supra.*) (4) As mentioned in plaintiff's response brief, suppose a recipient rents from someone who is interested only in long-term capital gains on his or her property and charges only so much rent as to cover his or her expenses (mortgage payments, taxes, etc.) even though the rental value is greater than this amount. One cannot charge the recipient with this difference in value. (This latter situation is closely analogous to the present case. Here the trailer had never been rented to anyone else and the

daughter did not intend to rent it out in the future. She was allowing her mother to live there, for which plaintiff paid all related expenses, while the daughter sought to sell the trailer, from which she, not her mother, would receive the income.) There are no grounds for reaching a different result here. Admittedly, the situation in this case involves housing owned by the plaintiff's daughter rather than housing purchased at arm's length in the private market place, but again the point is that plaintiff paid all expenses for living in the trailer. The situation might be different if plaintiff's daughter were making payments on the trailer or otherwise paying part of her mother's expenses, but that is not this case. Under the statute and regulation, where a recipient lives in the household of another, in-kind income is imputed to him or her using the one-third plus $20 formula. One might argue that plaintiff should not be better off because, instead of living with her daughter, she lives in a household owned by her daughter. In response, the law is clear that the above one-third plus $20 formula is not mandated by the statute where a person lives in his or her own household, rather than the household of another, and the formula was instead adopted by regulation on account of administrative feasibility and to set a ceiling on imputed income. Second, and probably more important, whether a recipient lives in another's household or his or her own, he or she is entitled under applicable law to show that he or she pays his or her pro rata share of the household's expenses and if he or she does so, no additional income is then imputed. Here plaintiff in fact pays all of her household's expenses. What it might cost for her to live elsewhere seems only remotely relevant; the issue here is her actually available income.

Two cases are most clearly on point. In the first, *Randall v. Goldmark*, 495 F.2d 356 (1st Cir. 1974), *cert. denied*, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119 (1974), the First Circuit reversed the lower court's finding that the recipient there did not receive in-kind income. In that situation, the recipient's divorced husband was obligated to pay $100 a month on the mortgaged house where the recipient continued to live, with the recipient paying the balance of $85. While the court of appeals reversed the case on jurisdictional grounds, it said in dicta that "it need only be shown that regular payments made by third parties directly benefit [a] . . . recipient in such a manner that they are actually used to defray expenses which such recipient would otherwise incur." More recently, in *Califano v. Heinol*, 576 F.2d 112 (7th Cir. 1978), the court of appeals considered the "rental value" of a house owned by a Supplemental Security Income recipient's sons, and in which she lived, in determining her countable income. However, the court did so without discussion and noted that the result there would have been the same "even if the rental value of the house was not included." (Her sons also gave her $135 a month in cash.) The court was not there addressing the "rental value" question and simply applied the proposition that is in question here. The house was there held in a land trust and was owned by the sons. There is no indication that the recipient was paying any of her shelter expenses, let alone all of them. On these other grounds, the case, to the extent that it must be, can be distinguished. The proposition for which the decision here stands—that one who pays all of his or her existing shelter expenses cannot be charged with additional income based on market value—would not change the result in that case.

Finally, on policy grounds, it is inappropriate for the Social Security Administration to scrutinize living arrangements on the basis of market value rather than expense to recipients, unless that market value represents actually disposable income to the recipient. The Supplemental Security Income program, unlike Aid to Families with Dependent Children and others, is premised on a notion of income maintenance where eligible recipients are entitled to a flat-grant. Where a person is paying all of her own expenses and receiving no help from others—except that those expenses are less than some otherwise deter-

mined market value, there is no reason to reduce that grant.

On the basis of the foregoing, a review of the record and transcript herein the decision of the defendant is reversed and set aside.

IT IS ORDERED that judgment enter in favor of plaintiff and against defendant and for such costs as have been herein expended.