In the Matter of YVONNE ROSENFELD, Petitioner, v BAR-
BARA BLUM, as Commissioner of the New York State
Department of Social Services, et al., Respondents.

Second Department, August 24, 1981

APPEARANCES OF COUNSEL

*Leonard S. Clark (Richard Gabriele* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Eugene E. Zegarowicz* of counsel), for State Commissioner, respondent.

OPINION OF THE COURT

LAZER, J. P.

■ This CPLR article 78 proceeding challenges the method utilized by the State Commissioner of Social Services to deduct Federal benefits from petitioner's public assistance grant of home relief. We find that the method used violates the economic assumptions implicit in the Social Services Law under which social services authorities are permitted to impute the receipt of additional income to public assistance recipients under certain circumstances. Specifically, we hold that the automatic deduction of certain "in-kind" income, as defined by the Social Security Administration and adopted wholesale by the State commissioner, impermissibly attributes such income to the petitioner.

I

Petitioner, a disabled person, was the recipient of $272 a month in public assistance (home relief, Social Services Law, § 157 *et seq.)* as well as $48 a month in food stamps (US Code, tit 7, § 2011 *et seq.)* until March, 1979, when she was served with a series of notices from the local social services agency prompted by her qualifying for Federal Supplemental Security Income (SSI) (US Code, tit 42, § 1381 *et seq.).* By separate notices the agency informed petitioner of its intent to discontinue both forms of aid it had been extending. Public assistance was to be terminated because of petitioner's failure to turn over (apparently pursuant to 18 NYCRR 370.11[d]) her first SSI benefit check so that the agency could recoup any home relief paid after that check's February, 1979 retroactive date; the food stamps were to be discontinued because petitioner's

status as a public assistance recipient was being terminated.

Five weeks later the agency withdrew its notice of termination of public assistance because the SSI check had been turned over to the agency; however, the agency never withdrew its food stamp discontinuance notice. The agency also informed petitioner that her public assistance grant was being reduced to $1.75 a month based upon the following budget calculation, which took her SSI·income into account[1]:

1. Subdivision (a) of section 158 of the Social Services Law specifies that an SSI beneficiary is ineligible for home relief; however, that provision was ruled unconstitutional in *Matter of Lee v Smith* (43 NY2d 453). The present determination by the State commissioner is based upon her response to that ruling, as incorporated in an administrative directive (No. 77 ADM-138, dated Jan. 6, 1978). The directive ordered local social services agencies to utilize the home relief standards in the Social Services Law respecting applicants' needs, income and resources in place of those provided under 1974 legislation that added a new title 6 to article 5 of that law ("Additional State Payments for Eligible Aged, Blind and Disabled Persons"), which had been designed to supplement the SSI program when newly enacted by Congress in those cases in which an applicant's need, as measured by the State plan, exceeded the SSI need standard (Social Services Law, § 207; see *Matter of Lee v Smith, supra,* p 457, and dissenting opn of JONES, J., pp 463-465). The standards of the new State plan, like the one it replaced, differed from those provided for recipients of home relief and aid to families with dependent children, which themselves were unified in 1974 in present section 131-a of the Social Services Law (see *Matter of Lee v Smith, supra,* p 458). The standard under the supplemental program, contained in section 209 of the Social Services Law, now matches that of the SSI program as fixed by the Social Security Administration (see Administrative Directive No. 77 ADM-138, at p 3). But the Federal SSI program, even with State supplementation, does not mesh with the State's legislative goal of providing a minimum standard of living pursuant to the mandate of the State Constitution for the "aid, care and support of the needy" (NY Const, art XVII, § 1; see *Matter of Lee v Smith, supra,* p 460; *Matter of Delmar v Blum,* 73 AD2d 252, 268, affd 53 NY2d 105). In most cases the SSI payment exceeds the amount an individual would receive were he dependent upon public assistance such as home relief *(Matter of Lee v Smith, supra,* p 458). Given this generosity in the SSI program in exceeding the schedule of home relief grants, this court has held that the living standard envisioned for public assistance recipients cannot be imposed on a better-off SSI beneficiary by permitting local social services agencies to assume contributions from the beneficiary to public assistance recipients who share the same household *(Matter of Delmar v Blum, supra,* pp 266-269). Facing the converse situation of an SSI beneficiary whose benefit level was below that of the public assistance schedule, the Court of Appeals has required the State to make up the difference *(Matter of Lee v Smith, supra,* pp 460-462).

NEED:

| | | |
|---|---|---|
| Basic Needs . . . . . . . | $ 94.00 | (Social Services Law § 131-a, subd 3; 18 NYCRR 352.2) |
| Shelter [maximum allowance for Nassau County] | $150.00 | (18 NYCRR 352.3) |
| Heating Fuel . . . . . . . . . . | $ 28.00 | (18 NYCRR 352.5) |
| | $272.00 | Public Assistance Grant |

LESS SSI BENEFITS:

| | |
|---|---|
| SSI CHECK . . . . . . . . . . . . . . | $187.12 |
| SSI "In-kind" Income . . . . | $ 83.13 |
| | $270.25 |

$   1.75 New Public Assistance.

At the fair hearing requested by the petitioner, the agency representative testified that the deduction of the in-kind income figure of $83.13 did not result from any investigation by the local agency but was the consequence of information conveyed to it by the Social Security Administration. Although petitioner declared that her sole monthly income apart from her public assistance grant was SSI benefits of $187.12, she also testified that she lived in her "own" home and that her sister handled all her financial affairs. The agency representative reported that the agency's figure for her "actual" rent was $417 a month, of which $267 was paid by "relatives". No information was offered respecting petitioner's marital status, her title to or equity in or shared occupancy of the house, or expenditures and consumption patterns relating to shelter, food or utilities.

With respect to food stamps the agency representative admitted that the agency's action in terminating the benefit had not been based on the reason specified in the notice of discontinuance but, instead, was grounded (apparently) upon a change in Federal law that made financial condition rather than public assistance status the sole eligibility criterion.

Petitioner's attorney argued that the agency's deduction

of $83.13 monthly as in-kind income from petitioner's public assistance grant was improper because the agency had failed to show that this sum constituted income or resources "available" to her under New York law (see Social Services Law, § 131-a, subd 1; 18 NYCRR 352.16 [a]; 352.23 [a]). He also pointed out that because petitioner remained a public assistance recipient, her food stamp entitlement could not be terminated absent agency action upon a ground specified in the advance notice required by 18 NYCRR 358.8 (a). In her decision after the fair hearing, the State commissioner rejected petitioner's challenge to the use of in-kind income and stated that the termination of food stamps was mandated by passage of the Food Stamp Act of 1977, which was being implemented by local social services districts between March 1 and June 30, 1979.

Petitioner then commenced this proceeding to annul the determination, to direct the commissioner to disregard in-kind income absent a showing of actual availability, and to direct a retroactive grant of public assistance and food stamps.

■ We believe petitioner is entitled to the relief sought, except with reference to retroactive benefits; in this regard, petitioner's relief is limited to a new fair hearing upon proper notice concerning her entitlement to such benefits under the home relief and food stamps programs. The State commissioner has already acquiesced in the relief sought with respect to food stamps. This position comports with the rule set down in *Matter of Ryan v New York State Dept. of Social Servs.* (40 AD2d 867), which requires annulment of a determination based upon a reason not specified in the notice to the public assistance recipient (see, also, 7 CFR 273.13 [a] [2]).

■ With respect to the reduction of public assistance by an amount calculated by the Social Security Administration to be "in-kind" income, the record here is woefully short of evidence sufficient to sustain the agency's determination.

The State commissioner argues that petitioner has not been prejudiced by the State's uncritical adoption of the

Federal agency's determination, "especially since the actual 'in-kind' income is the sum of $267—the amount contributed toward petitioner's rent by her sister." This assertion, made for the first time in this court, is frivolous.

First, apart from the issue of the weight to be given to the hearsay opinion of the Social Security Administration, there is nothing in the record to indicate just how the precise figure of $83.13 was derived or how it relates to petitioner's shelter expense or to any other resource or expense in this matter.

Second, the argument ignores the fact that the record reveals only that whatever the relatives may pay for the rent alone on petitioner's behalf is in addition to the maximum *shelter* allowance for a one-person household paid petitioner under the commissioner's regulations; hence it does not appear to be a resource available to meet any of petitioner's *other* needs. The commissioner apparently labors under the assumption that in-kind income, determined under SSI criteria, is allocable to those needs of petitioner met by public assistance, and that home relief payments can be pruned accordingly to reflect this substitution of private for public dollars.

Although the first objection to the commissioner's argument is sufficient of itself to mandate annulment of the determination under review, reconsideration on remittitur for the purpose of establishing the nature and amount of in-kind income necessarily will implicate the assumption that petitioner's in-kind income is allocable to whatever of her needs as are met by public assistance. Examination of this assumption is thus warranted.

## II

Home relief is funded and controlled entirely by the State (see *Matter of Delmar v Blum*, 53 NY2d 105), and under compulsion of the State and Federal Constitutions the commissioner must use State dollars to make good any shortfall between SSI benefits and the State public assistance schedule in those instances in which the Federal benefits fail to equal or exceed the public assistance living standard *(Matter of Lee v Smith*, 43 NY2d 453). The issue, therefore, is whether the commissioner's deduction from home relief on account of SSI "in-kind" income underassesses the petition-

er's needs as fixed under State law. To resolve the issue, it is necessary to examine the criteria used in the statutory SSI and home relief schemes for measuring petitioner's needs in light of her income and resources.

The general rule for both schemes is that an applicant's eligibility and the amount of benefits or assistance must take into account only such income and resources as are *actually* available to the applicant. State law imposes this limitation in express terms (see Social Services Law, § 131-a, subd 1; 18 NYCRR 352.16 [a];[2] 352.23 [a];[3] *Matter of Dumbleton v Reed*, 40 NY2d 586; *Matter of Reid v Toia*, 72 AD2d 465, 467-468). Federal regulations, including those for SSI,[4] generally impose the actual availability requirement upon Social Security programs (former 20 CFR 416.1120;[5] 45 CFR 233.20 [a] [3] [ii] [D][6]), forbid the use of assumptions respecting contributions from nonlegally responsible individuals in the household (45 CFR 233.20 [a] [2] [viii])[7] and prohibit inclusion of SSI beneficiaries (45 CFR 233.20 [a] [1] [ii])[8] or nonlegally re-

2. "All income and resources of an applicant for or recipient of ADC or HR shall be considered in order to determine its availability * * * and, when determined to be available, after policies governing the exemption and disregard of such income and resources have been applied, shall be applied towards meeting the needs of an individual and his dependents."

3. "Utilization of resources—general policy. (a) * * * Applicants and recipients shall generally be required to utilize available resources and to apply for and otherwise pursue potentially available resources." ~

4. See, however, the discussion at n 11 *(infra)* respecting the regulations under former 20 CFR 416.1125 (b), (c), (d), (e), which authorized a "presumption" of "in-kind" income in various household arrangements *except* for an opposite presumption favoring beneficiaries of households in which all members are recipients of some form of public income maintenance, as defined to include SSI, ADC and "[g]eneral assistance provided by State or local governments [e.g., home relief]" (20 CFR 416.1125 [b] [6] [iv] [*g*]; see *Matter of Leone v Blum*, 73 AD2d 252, 266-268).

5. "Availability of unearned income. In determining the amount of unearned income the amount actually available to the individual is considered."

6. "Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance".

7. "[T]he agency will not assume any contribution from such individual for the support of the assistance unit."

8. "[I]ndividuals receiving SSI benefits under title XVI [SSI], for the period

sponsible individuals (45 CFR 233.20 [a] [2] [viii];[9] 233.20 [a] [3] [vi][10]) in households receiving aid to families with dependent children (ADC) for purposes of prorating public assistance (see *Green v Barnes*, 485 F2d 242; *Kimmes v Califano*, 472 F Supp 474; *Wilczynski v Harder*, 323 F Supp 509; but see *Antonioli v Harris*, 624 F2d 78).

In the instant matter the State commissioner accepted the Social Security Administration's determination that there was available to petitioner a sum denominated as "in-kind" income, which is treated in section 1382a (subd [a], par [2]) of title 42 of the United States Code: "[U]nearned income means all other income [apart from earned income (§ 1382a, subd [a], par [1]; 20 CFR 416.1102 [c])], including—(A) support and maintenance furnished in cash or kind; except that in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving support and maintenance in kind from such person, the dollar amounts otherwise applicable to such individual (and spouse) as specified in subsections (a) and (b) of section 1382 of this title [respectively, income and resource eligibility and benefit levels] shall be reduced by $33\frac{1}{3}$ percent in lieu of including such support and maintenance in the unearned income of such individual (and spouse) as otherwise required by this subparagraph".

There is nothing in the concept of in-kind income that would give pause, so long as it is defined to mean a recipient's limited right to consume a particular good or service —such as groceries or, in the instant matter, shelter. This definition would exclude the right to dispose of income—

for which such benefits are received, shall not be included in the AFDC assistance unit for purposes of determining need and the amount of the assistance payment."

9. "[T]he money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual".

10. "In family groups living together, income of the spouse is considered available for his spouse and income of a parent is considered available for children under 21, except that, under the AFDC plan, if a spouse or parent is receiving SSI benefits under title XVI, then, for the period for which such benefits are received, his income and resources shall not be counted as income and resources available to the AFDC unit." (This exclusion was effectively extended to home relief households in *Matter of Leone v Blum, supra*, pp 266-268, 268-273.)

typically, cash—to meet any needs, either directly or by sale or conversion, in accordance with the recipient's *unrestricted* preference (see former 20 CFR 416.1102 [a]; *Green v Barnes*, 485 F2d 242, 244, *supra*).

Petitioner's relatives, however, apparently contribute money for petitioner's rent in an amount that supplements the maximum home relief shelter allowance for the county. There is nothing in the record to show that petitioner had the right to dispose of that money to meet any of her other needs. Yet it is from this contribution that the Social Security Administration derived the $83.13 figure that was *assumed* by the commissioner to be available to the petitioner for meeting her needs.

The commissioner argues that her determination merely followed a Department of Social Services policy statement included in the record (Administrative Directive No. 77 ADM-138), which sets forth guidelines for home relief supplementation of SSI benefits. This document points out that the SSI benefit is a flat grant based on living arrangement, while the home relief budget is calculated on a basic allowance to which is added a grant for shelter; moreover, the restrictions upon excludable income and resources are more severe under the State scheme. Although the amounts calculated for petitioner's home relief budget indicate that she was found to be residing in a one-person household under section 131-a of the Social Services Law and 18 NYCRR 352.2, the local Social Services agency's argument is that, in taking SSI into account, it utilized an illustration in the directive that dealt with recipients who live "in [the] household of another," as contrasted with two other living arrangements—"living alone" (beneficiary or beneficiary and eligible spouse) and "living with others". The directive distinguishes the "living with others" household from the "living in [the] household of another" arrangement by noting that the latter category receives a smaller SSI grant on the ground that in-kind income of a fixed amount reduces SSI need for this category. Apparently, that fixed amount in petitioner's case is the $83.13 "in-kind" income figure, based upon a household composition not specified in the record.

The administrative directive appears to have followed

the Federal regulations promulgated under the statutory provision for in-kind income set out above. The regulations, summarized in the margin,[11] rely heavily upon a variety of presumptions based upon marital status, household composition, property interest in the residence, and the form of in-kind support (i.e., both food and shelter or only food or shelter). The obvious problem with the State commissioner's indirect reliance on these regulations is that there is no authority under the Social Services Law or regulations to adopt such presumptions in making a determination of need, which purports to represent the extent to which income and resources actually available fail to sustain the statutory public assistance living standard.

There may also be a more subtle problem with the commissioner's use of the SSI in-kind income figure. On the one hand, the regulations' automatic one-third reduction in SSI benefits for beneficiaries residing in multimember households may be premised solely upon the assumption that the market value of in-kind income amounts to one third of the SSI benefit. On the other hand, the fact that both the statute and the regulations focus upon the multi-member household situation indicates that the term "in-kind" income also expresses the value charged to the

---

11. Briefly, former 20 CFR 416.1125 operated as follows: If an SSI beneficiary resides in another's household and receives both support and maintenance (i.e., food and shelter), the standard SSI payment is reduced by one third in lieu of determining the value of such support, regardless of the beneficiary's contributions unless they equal or exceed his pro rata share of household expenses (20 CFR 416.1125 [b] [1]). The definition of "another person's household" presumptively includes personal residences in which at least one member is not a close relative (20 CFR 416.1125 [b] [2]), but does not include households in which, for example, the beneficiary has an ownership interest, is liable for any portion of the rent, or pays his pro rata share of expenses (20 CFR 416.1125 [b] [3]). Rebuttal is limited to situations in which the beneficiary can show he is not living in another's household, as defined, or does not receive both food and shelter in-kind, or is living in a household in which every member is a recipient of public income maintenance, defined to include ADC, SSI and general State welfare programs (20 CFR 416.1125 [b] [6]). If the beneficiary does not live in another's household, there are separate provisions that, for instance, set up a presumption of a maximum one-third reduction rebuttable by a showing of the actual value of in-kind support and the beneficiary's own contributions if the beneficiary either resides in his own household or a commercial establishment or receives food or shelter but not both (20 CFR 416.1125 [d]; see, also, 20 CFR 416.1125 [e], [f]).

beneficiary's budget under an accounting for the economic benefit arising from certain economies of scale inherent in multimember households that share one standard of living (see, e.g., former 20 CFR 416.1125). This surplus income can be defined more particularly as the measurable per capita benefit representing that portion of the market value of any goods or services which exceeds the cost of acquiring them, and derives from efficiencies achieved by the multimember household's pooling its resources to make such acquisitions as a unit for the shared use of all its members, instead of permitting each member to make a separate acquisition from his own resources for his exclusive use. This allocation of income among household members is a matter of economic fact recognized with respect to public assistance households by section 131-a of the Social Services Law through preservation of a single, subsistence-level living standard in an assistance schedule that reduces the per capita grant as the household size increases (see *Matter of Padilla v Wyman*, 34 NY2d 36, 40-42; *Matter of Leone v Blum*, 73 AD2d 252, 258, 268-269; see, also, *Kimmes v Califano*, 472 F Supp 474, 476-477, *supra* ["imputed" income]). It is to be distinguished from the imputing of the income and resources of one spouse to another, or of a parent to a minor child, by reason of legal support duty (see Social Services Law, § 101, subd 1; US Code, tit 42, § 1382c, subd [f]; see, also, *Matter of Leone v Blum, supra*, p 264).

The State public assistance scheme and the SSI scheme are not compatible in measuring such surplus income for purposes of establishing an applicant's needs. Unlike section 131-a of the Social Services Law, which takes into account surplus income of any sort—cash or in-kind—for public assistance households of every size, sections 1382 and 1382a of title 42 of the United States Code are concerned basically with only three household categories—a beneficiary alone, a beneficiary with an eligible spouse, and a beneficiary with or without an eligible spouse living in another person's household; further, the reduction is one third of the flat SSI benefit amount for a beneficiary or beneficiary with eligible spouse, rather than the gradual reduction in proportion to household size under public

assistance. Additionally, the analysis of an applicant's needs under the State's public assistance scheme has eschewed presumptions about the availability of in-kind income or surplus income in favor of a close evaluation of the economic factors at work in each situation (see, e.g., *Swift v Toia*, 461 F Supp 578, affd 598 F2d 312 [in-kind income]; *Matter of Leone v Blum*, 73 AD2d 252, 270, n 15, *supra* [surplus income]; *Matter of Slochowsky v Shang*, 67 AD2d 926, affd 48 NY2d 887 [either in-kind income through shelter purchase and sharing or surplus income through incremental shelter sharing alone]). Furthermore, the public assistance analysis asks whether the donor conferring a cognizable benefit of in-kind or surplus income has been shown to be aware that he is substituting his own resources for what otherwise must be provided by public assistance authorities to meet the recipient's needs (see *Matter of Leone v Blum, supra*, p 270, n 15).

Such analysis is foreclosed by the dearth of facts in the record of the instant matter, which reveals only that the Social Security Administration derived a figure as "in-kind" income from a larger sum contributed toward petitioner's shelter expenses. This court cannot reconstruct from so little information those factors of significance to the derivation of the SSI "in-kind" income figure and certainly not to the demanding analysis under the State's public assistance law.

### III

On the record it appears that the challenged SSI "in-kind" income figure may have represented actual in-kind income earmarked by the relatives (who may or may not share the apparently multimember household) so as to be unavailable to meet any of petitioner's needs other than shelter. The figure may also have represented, in part, surplus income arising from the unspecified household arrangement, and therefore might actually be available for purposes of reducing petitioner's other needs—if the household shares petitioner's standard of living (see *Matter of Leone v Blum, supra*, p 270, n 15).

The lack of any evidentiary basis to make a reasoned

analysis of the financial situation of petitioner compels the conclusion that the State commissioner cannot use the SSI figure as an administrative shortcut to her determination of public assistance needs. The commissioner's duty is to establish upon substantial evidence the composition of the petitioner's household, the precise nature and sources of her support, and the intentions of those persons, if any, who directly or indirectly support her or the household.

This matter must therefore be remitted to the State commissioner for a redetermination based upon a record meeting such requirements.

MANGANO, COHALAN and MARGETT, JJ., concur.

Petition granted to the extent that the determination of the State commissioner, dated July 6, 1979, is annulled, on the law, without costs or disbursements, and the matter is remitted to the State commissioner for further proceedings in accordance with the opinion herein.