Delma USHER, Margaret Dolan, Matilda DeFranco, Reba Shaer and
Rose Burgio

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.

Civ. A. No. 78-3261-Z.

United States District Court,
D. Massachusetts.

Jan. 20, 1981.

Mark S. Coven, Patricia A. Cantor, Greater Boston Elderly Legal Services, Boston, Mass., for plaintiffs.

Donald R. Anderson, Asst. U. S. Atty., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiffs are named recipients and a former recipient of benefits under the Supplemental Security Income program ("SSI") 42 U.S.C. §§ 1381 *et seq.*, who live and pay rent on a house or apartment owned by a son or daughter. Defendant Secretary of Health, Education and Welfare, now the Department of Health and Human Services, ("the Secretary") decreased or eliminated plaintiffs' SSI benefits pursuant to regulations codified at 20 C.F.R. § 416.1125, which impute income to SSI recipients in an amount equal to the difference between the amount of rental payments actually made and the fair market value of the accommodations. The Secretary thereupon deducted this amount of "in-kind income" from plaintiffs' benefits in accordance with the agency regulation.

Plaintiffs challenge the regulation and its enforcement by the Secretary on several grounds: first, that it is inconsistent with the Social Security Act and thus an invalid exercise of defendant Secretary's authority to issue regulations; second, that the classification scheme violates plaintiffs' rights to due process and equal protection of the laws; third, that the agency rulemaking was arbitrary, capricious or an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), the Administrative Procedure Act. On February 7, 1979 this court entered a preliminary injunction to prevent imputation of in-kind income with respect to plaintiffs Usher and Dolan, and on May 31, 1979 with respect to remaining plaintiffs. The case is now before me on cross motions for summary judgment.

### I. *Facts*

The plaintiffs are four recipients and one former recipient of SSI benefits. In 1977 and 1978 the Secretary contacted the respective family members from whom the named plaintiffs rented their residences and determined from communications with those family members that the units would be rented to a non-family member at a specified monthly rate higher than that which the plaintiffs paid. The Secretary then reduced the SSI benefits received by plaintiffs or eliminated the benefits entirely based on the market value rate communicated to the Secretary by the family members who owned the dwellings. Pursuant to the regulation in question, the Secretary deducted the difference in rental cost from the SSI benefits which plaintiffs received.[1]

### II. *Statutory Claims*

Plaintiffs contend that Congress' definition of income in the SSI statute, 42 U.S.C. § 1382a(a)(2), is inconsistent with the Secretary's Regulation at 20 C.F.R. § 415.-1125, because the regulation authorizes the imputation to plaintiffs of "income" which is not actually available to them and which cannot be converted to cash to meet basic needs. Under the statutory scheme of the SSI program, benefits are reduced by the amount of income, both earned and unearned, of each recipient, 42 U.S.C. § 1382a. 42 U.S.C. § 1382a(a)(2) defines income as follows:

(a) For purposes of this subchapter, income means both earned income and unearned income; and,

---

1. In the cases of plaintiffs Usher, Shaer and Burgio, SSI benefits were reduced in the amount of the difference. In the case of plaintiff DeFranco, benefits were reduced in the amount of a maximum "in-kind" reduction permitted by the SSI state, see 20 C.F.R. § 416.-1125(d). In the case of plaintiff Dolan, the difference, when imputed as income, raised total income to a point in excess of the eligibility maximum of the SSI statute, and her benefits were consequently terminated.

(2) Unearned income means all other income, including,

(A) Support and maintenance furnished in cash or kind; except that in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving support and maintenance in kind from such individual (and spouse) as specified in subsections (a) and (b) of section 1382 of this title shall be reduced by 33⅓ percent in lieu of including such support and maintenance in the unearned income of such individual (and spouse) as otherwise required by this subparagraph.

The Secretary is empowered by 42 U.S.C. § 1302 to "make and publish such rules and regulations not inconsistent with [chapter seven of Title 42 U.S.C.] as may be necessary to the efficient administration of the functions with which [she] is charged..." Pursuant to that authority the Secretary promulgated 20 C.F.R. § 416.1102(a) which defines income as "the receipt by an individual of any property or service which he can apply, either directly or by sale or conversion to meeting his basic needs for food, clothing and shelter." This general definition is then elaborated through other regulations that describe particular situations, including the challenged regulation, 20 C.F.R. § 416.1125(d), which reads in full:

(d) *Valuation of support and maintenance for individuals in household situations.* When an eligible individual (or eligible spouse) lives in a household (i. e., is not in an institution), the reduction in the *payment standard described in paragraph (b) of this section is inapplicable, and the provisions of §§ 416.1185 (see paragraph (c)(3)) and 416.1190 do not apply, any support and maintenance received in kind but not received in lieu of cash wages (see § 404.429(c) of this chapter) is unearned income.* In such cases effective with payments for December 1974, the maximum value of such support and maintenance is presumed to be that amount which, for an individual or a couple with no other income, would result in payment at two-thirds of the applicable standard; i. e., the value is presumed to be one-third of the payment standard, plus the exclusion applicable to unearned

income. This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value.

By defining income inclusively to cover all "support and maintenance furnished in cash or kind" Congress allocated to the Secretary the task of interpreting, through regulations such as those cited above, the particular circumstances in which SSI recipients would be deemed to be receiving deductible income "in kind". Plaintiffs contend that the Secretary's policies and the case law on the subject have narrowed the ambit of the statutory definition to include only those circumstances in which the income received is "actually available" to the recipient. *King v. Smith*, 392 U.S. 309, 319 n.16, 88 S.Ct. 2128, 2134 n.16, 20 L.Ed.2d 1118 (1968); *National Welfare Rights Organization v. Mathews*, 533 F.2d 637, 647 (D.C.Cir.1976). Plaintiffs then argue that because they cannot transform into cash the amount by which the fair market value of their apartments exceeds the rental they pay, they have received no income which is "actually available" to them, relying on *Kimmes v. Califano*, 472 F.Supp. 474 (D.Colo.1979). While the question is not without difficulty, I find that by living in apartments for which they pay less than market value, plaintiffs receive a benefit which is applied directly to meeting their needs for adequate housing. Although they cannot translate that benefit into cash which may be used for other purposes, the benefit is nevertheless "actually available" to them in the sense that it directly affects and improves the quality of their living environment. Such a benefit may be characterized by the Secretary as "in-kind" income consistent with the meaning of 42 U.S.C. § 1382a(a)(2). I therefore conclude that the Secretary's challenged regulation does not contravene Congress' statute. *Styles v. Harris*, 503 F.Supp. 125 (D.Md. 1980); *Antonioli v. Harris*, 624 F.2d 78 (9th Cir. 1980).

## III. *Constitutional Claims*

Plaintiffs further challenge the Secretary's regulation at 20 C.F.R. 416.1125(c) and (d) on the ground that it creates an irrational classification in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. The challenged regulation operates to reduce the SSI benefits of recipients who live in "informal" living situations, typically apartments in two- or three-family houses owned by a son or daughter for which they pay a rent less than market value. The regulatory scheme, as described above, characterizes the difference between rent paid and market value as "in-kind income" to the recipient, and reduces benefits accordingly, up to a maximum amount. Recipients who enter into formal leases for their apartments, however, are excluded from the operation of the regulation, irrespective of whether the landlord is a relative or a stranger, or whether the rental specified in the lease accurately reflects market value. In addition, SSI recipients who live in federally subsidized housing are explicitly excluded from the application of the challenged regulation by 20 C.F.R. §§ 416.1146(k) and 1236(12), although the market value of a subsidized apartment is almost invariably far greater than the rental payment made by the tenant.[2] SSI recipients who live in apartments owned by relatives, those who lived in leased apartments, and those who live in subsidized housing all have the same non-housing expenses for items such as food, clothing and transportation. All have extremely limited incomes with which to attempt to meet those needs. All may well live in apartments for which they pay significantly less than market value rentals. Yet only those who, like plaintiffs, live in houses owned by relatives will have their SSI benefits reduced or even discontinued, (as in the case of plaintiff Dolan) by the application of the challenged regulation. By definition plaintiffs have no additional sources of income which they can apply to purchasing the necessities of life; indeed, eligibility requirements assure that even with SSI payments, recipients will have only the minimum necessary to meet basic and essential needs. 42 U.S.C. § 1382.

In practical effect, the challenged regulation creates at least two classes of persons for SSI purposes: one class is composed of those individuals who live without formal leases, in houses owned by relatives, and the other class consists of persons who live in federally subsidized housing or in housing for which they have formal leases. The latter class receives full SSI benefits, while the former class has its benefits reduced or discontinued. The challenged regulation, 20 C.F.R. § 416.1125(c) and (d), thus establishes in practice a classification which treats persons who are otherwise similarly situated differently with respect to the distribution of a federally funded government benefit, SSI. Where a governmental regulation creates a classification which results in different treatment of the members of each class, the constitutional requirement of equal protection mandates that the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). Put simply, if the challenged regulation is to withstand constitutional scrutiny, it must further either the stated purpose of the SSI program or serve some other legitimate governmental interest. *U.S. Department of Agriculture v. Moreno*, 413 U.S. 528, 534,

---

**2.** 42 U.S.C. § 1437a(1). Subsidized tenants pay a maximum of twenty-five percent of family income for rent. The difference between this amount and market value is made up by cash subsidies to private landlords or by having the government construct and maintain the housing itself. S.Rep.No.93–693, 93d Cong.2d Sess. (1974) documents the purposes and functions of the Housing and Community Development Act of 1974, noting the very substantial sums which must be allocated to the various programs "to enable local public housing agencies to achieve and maintain adequate operating and maintenance services and reserve funds while maintaining the low-income character of their development...." (1974) U.S.Code Cong. and Ad.News, pp. 4273, 4312.

93 S.Ct. 2821, 2825–2826, 37 L.Ed.2d 782 (1973).

■ The Federal Supplemental Security Income (SSI) program, established in 1972, P.L. 92–603, Title III, 86 Stat. 1465, 42 U.S.C. § 1381 *et seq.*, is "a national program to provide supplementary security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. § 1381. Legislative history of the program reflects an explicit congressional concern to "provide an effective assistance program" which will "keep the total income" of those who, because of age, disability or blindness are not able to support themselves "from falling below the poverty line." H.R.Rep.No. 92–231, 92d Cong., 2d Sess. reprinted in [1972] U.S.Code Cong. and Ad.News, pp. 4989, 5132–5133. The program provides a flat grant designed to supplement otherwise insufficient sources of income in order to bring the recipient's total income up to a legislatively established floor. The goal of the SSI program, in brief, is to enable needy persons who are aged, blind or disabled to meet their basic needs for food, clothing, shelter and other essentials. An examination of the effect of the challenged regulation on the lives of those SSI recipients to whom it is applied, however, reveals that it frequently frustrates rather than furthers the objects of the SSI program.

To understand this discriminatory result, consider the operation and effect of the challenged regulation on the three categories of SSI recipients who comprise the classification described above. All three have the same total monthly income, including social security and SSI. The SSI recipient whose apartment is subsidized will pay a maximum of 25 percent of income for rental, 42 U.S.C. § 1437a(1). At the same time, under a program such as "section 8" housing, a cash subsidy may be paid to the landlord equal to the difference between rental paid and fair market value 42 U.S.C. § 1437f (1974), but the amount of that subsidy will not be imputed as "in-kind" income to the recipient, 20 C.F.R. §§ 416.-1236(12) and 416.1146(k), who will thus be assured of retaining 75 percent of income

each month for non-housing necessities. The same result would obtain if the recipient and his or her relative were sophisticated enough to enter into a lease—the Secretary would impute no income and make no deductions. But the recipient who, like plaintiff Usher, lives with a relative but without a lease, frequently paying substantially more than 25 percent of her income for rent (plaintiff Usher paid 37 percent of her income for rent *before* the Secretary enforced deductions from her benefits pursuant to the challenged regulation) will have her benefits reduced by the operation of the section to an amount, in plaintiff Usher's case, equal to less than 40 percent of her previous total income, an amount which must nevertheless cover the entire cost of utilities, food, clothing and transportation. If the recipient chooses to remain close to her family despite the severe reduction in benefits, the price of such a choice may be the sacrifice of adequate nutrition, warm clothing and other necessities which the reduced income can no longer provide. This result directly conflicts with the explicit goals of the SSI program discussed earlier, in that it causes rather than alleviates a situation in which elderly and disabled persons are unable to afford the basic necessities of life.

Because this result is so severe (after the imputation of income to plaintiff Usher for example, she was left with approximately $30.00 a month for food, clothing and transportation) many SSI recipients will be forced to consider moving to housing situations which are excluded from the operation of the challenged regulation, in order to obtain a *restoration* of full SSI benefits. One such option would be a move to an apartment which rents on the open market for the same amount the recipient was paying in rent to a relative. Such a move may well entail a significant reduction in the qualities of safety, comfort, and healthfulness of the living environment, a result which again contravenes the basic goals of the SSI program. Another option would be to apply for subsidized housing, increasing

the already heavy demand for governmentally-operated housing.

Thus, the direct consequences of the application of the regulation include deprivations of basic necessities such as food, clothing and decent shelter, in contravention of the stated purposes of the SSI program.

A secondary goal which the regulation may be intended to serve is the conservation of limited financial resources by the elimination of situations in which recipients seem to be receiving "something for nothing." As the Third Circuit recently noted, however, "while it may be true that saving ... funds is a legitimate state interest, where welfare benefits are involved, it is incumbent upon the state to proceed in a manner which achieves that goal while fairly treating similarly situated persons." *Medora v. Colautti*, 602 F.2d 1149, 1153 n.9 (3d Cir. 1979). Obviously, every measure which reduces the amount of benefit payments to be made can be said to serve the interest of conserving funds; such a measure may nevertheless be constitutionally problematical if it imposes severe financial penalties arbitrarily upon a certain group. The challenged classification at issue here, (persons living without leases in buildings owned by relatives versus persons living in subsidized housing or private housing with leases) imposes financial penalties in just such a discriminatory manner. By ignoring the common denominator of need among SSI recipients in all categories, it puts the Secretary in the position of declaring, in effect, that persons living with relatives are less needy than persons living in subsidized or leased housing, a result which is both untrue and unfair.

The government's putative money-saving goal is even further undercut by the fact that many recipients, faced with a reduction in benefits, will move out of their houses into market or subsidized housing. Such a move will not only produce a complete restoration of SSI benefits, eliminating any financial savings to the government from the earlier deductions, but in the case of subsidized housing, the government will also be forced to assume the additional financial burden of the housing subsidy.

In practical effect and operation, the challenged regulation does not operate to rationally further any legitimate state interest. Persons who submit to its penalties may suffer precisely the privations the SSI program was designed to alleviate, while those who attempt to avoid its effect by moving into subsidized housing will thereby increase rather than decrease the financial burden on the Federal government. "Traditional equal protection analysis does not require that every classification be drawn with precise mathematical nicety; ... But the classification here in issue is not only 'imprecise', it is wholly without any rational basis." *Moreno, supra*, 413 U.S. at 538, 93 S.Ct. at 2827–2828. In sum, while the challenged regulation's definition of income is not inconsistent with statutory definition, the regulation as applied is inconsistent with the goals and objectives of the Social Security Act, and imposes financial burdens irrationally on certain groups. The regulation is therefore arbitrary and in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. Plaintiffs' motion for summary judgment is accordingly allowed; defendants' motion for summary judgment is denied. Judgment may be entered permanently enjoining the Secretary from enforcing the challenged regulation, 20 C.F.R. § 1125(c) and (d) against plaintiffs by imputing as income to them an amount equal to the difference between rental payments made and the market value of their shelter.