Zella KIMMES, Plaintiff-Appellee,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant-Appellant.

No. 79–1961.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 29, 1981.

Decided April 22, 1981.

Lenny L. Croce, Atty., Rural Legal Services of Tennessee, Oak Ridge, Tenn. (Jeffery Link, Attorney, Jefferson County Legal Aid, Golden, Colo., with him on the brief), for plaintiff-appellee.

Verrell L. Dethloff, Jr., Atty., Baltimore, Md. (Randolph W. Gaines, Chief of Litigation, Social Security Division, Dept. of Health, Education, and Welfare, Baltimore, Md., and Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., and Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on the brief), for defendant-appellant.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a Supplemental Security Income (SSI) case. The Secretary of the Department of Health, Education and Welfare (HEW)[1] held that Zella Kimmes' rental arrangement with her daughter caused her to receive "in-kind" income, which, in turn, raised her income to a level so high that she became ineligible for SSI benefits. The District Court, on review, held that Mrs. Kimmes did *not* receive in-kind income as a result of her rental arrangement, and, accordingly, reversed and set aside the Secretary's decision. *Kimmes v. Califano*, 472 F.Supp. 474 (D.Colo.1979). The Secretary appeals. We reverse the District Court.

This appeal requires consideration of a statute and certain implementing regulations. The statute involved is set forth in Appendix I, and the implementing regulations in Appendix II. The immediate issue is whether, under the statute and the implementing regulations, the rental arrangement between Mrs. Kimmes and her daugh-

---

1. The Department of Health, Education and Welfare (HEW) is now the Department of Health and Human Services (HHS).

ter results in the receipt by Mrs. Kimmes of in-kind income. If, as the Secretary found, Mrs. Kimmes receives in-kind income, then she is ineligible for SSI benefits.

Mrs. Kimmes received SSI benefits from July, 1975, to August, 1976. She was notified by letter dated August 13, 1976, that her benefits were being terminated. On request for reconsideration, the determination of ineligibility was allowed to stand. Subsequently, an Administrative Law Judge held that Mrs. Kimmes was not entitled to SSI benefits, and the HEW Appeals Council affirmed the Administrative Law Judge (ALJ).

Mrs. Kimmes is a widow, now 60 years of age, who is disabled because of a heart condition. At the time her SSI benefits were terminated, she was receiving $143.20 monthly as disability insurance benefits under the Social Security Act, and $44.60 in SSI benefits, for a total of $187.80 monthly in federal welfare payments.

At the time her SSI benefits were terminated, Mrs. Kimmes lived by herself in a small, one-bedroom trailer owned by her daughter, LaDonna M. Lee. The trailer was owned outright by Mrs. Lee, who received it in a divorce property settlement. The trailer was too small for the daughter and her child to live in, so the daughter allowed her mother, Mrs. Kimmes, to live in the trailer. Mrs. Kimmes paid no rent for her use of the trailer. Mrs. Kimmes did pay the rental on the space where the trailer sat, as well as licensing fees and taxes, which the ALJ found totalled about $70 per month. It would appear that Mrs. Kimmes also paid her own utilities and was obligated to pay for repairs or maintenance on the

house trailer, although there had been no such expenses. The ALJ found the current rental value of the house trailer to be $150 monthly, and, as we understand it, there is no challenge made to that particular finding.

Based on the foregoing facts and figures, the ALJ found that Mrs. Kimmes received in-kind income of $80 per month as a result of her rental arrangement with her daughter. This amount was arrived at by subtracting the amount paid per month by Mrs. Kimmes for space rental, licensing fees, and taxes, namely $70, from the current monthly rental value of the trailer itself, namely $150.[2] This in-kind income of $80 per month caused Mrs. Kimmes to become ineligible for SSI benefits. It was on this basis that the Secretary terminated Mrs. Kimmes' SSI benefits, although the disability insurance benefits under the Social Security Act continued.[3]

The precise problem which now confronts us has been considered by several other federal courts. The Ninth Circuit Court of Appeals and United States District Courts for the District of Maryland, the Western District of Tennessee, the Northern District of Indiana, and the Eastern District of California have upheld the Secretary's determination that a housing arrangement of the present type does constitute in-kind income. On the other hand, United States District Courts for the District of Massachusetts and the Middle District of Pennsylvania, as well as the United States District Court for the District of Colorado in the instant case, have reached an opposite conclusion when faced with essentially the same facts. The United States District Court for the District of Oregon upheld the Secretary's interpre-

---

**2.** The amount actually attributed to Mrs. Kimmes as in-kind income was $75.93. The ALJ arrived at this figure by applying a formula set out in 20 C.F.R. § 416.1125(d) (1980). In effect, someone receiving the type of maintenance which Mrs. Kimmes received from her daughter would be deemed to have unearned income amounting to one-third of the maximum SSI monthly payment, which was then $167.80, plus $20. In this case, it made no difference whether Mrs. Kimmes was credited with receiving $75.93 or the full $80, since

either amount would have made her ineligible for any SSI benefits.

**3.** At the time Mrs. Kimmes' benefits were terminated, the maximum SSI payment was $167.80. This maximum was reduced by certain other income pursuant to various HEW regulations. Mrs. Kimmes received $44.60 monthly in SSI benefits. One factor taken into consideration in computing the level of SSI benefits is other benefits payments, such as Mrs. Kimmes' disability insurance benefits received under the Social Security Act.

tation of the applicable statute and implementing regulations, but reversed her decision on the ground that the Secretary's finding as to the current rental value of the house there involved was not supported by substantial evidence. There may be other courts which have considered this precise problem, but none have been brought to our attention, nor have we discovered any in our own research. A review of the cases will place our particular problem in better focus.

In *Antonioli v. Harris*, 624 F.2d 78 (9th Cir. 1980), the SSI recipient lived alone in a house owned by his father. The recipient paid no rent for the house, but did assume responsibility for payment of property taxes and maintenance expense. The Secretary held that the difference between the current rental value of the house, and the taxes and expenses paid by the recipient, constituted in-kind support from the recipient's father. On review, a District Court granted summary judgment in favor of the Secretary. On appeal, the Ninth Circuit Court of Appeals affirmed. In so doing, the Court of Appeals held that the Secretary's decision was a reasonable construction of the enabling legislation and was based on a valid regulation which had been appropriately applied. The Court rejected the recipient's argument that he did not receive any unearned income and observed that by not paying his father any rent, "he thus fared better and had more resources available than an SSI recipient forced to locate and finance housing in the open market."

In *Herndon v. Harris*, Civil No. S–79–462 (E.D.Cal. Dec. 8, 1980), and *Young v. Califano*, Civil No. S–79–225 (E.D.Cal. Dec. 8, 1980), the District Court, in unpublished opinions, upheld the Secretary's decision on the ground that such was required by *Antonioli*. In each case the District Judge, however, clearly indicated his personal dissatisfaction with the result which he felt compelled to reach.

The recipient in *Herndon* lived in a house owned by her son. She paid $50 per month rent, which was all she could afford. The fair market rental value of the property was $150 per month. The District Court, as indicated, reluctantly upheld the Secretary's determination that there was in-kind income, based on *Antonioli*.

The recipient in *Young* lived in a house owned by her son, paying him $140 monthly as rent. The Secretary determined the fair market value of the house to be $225 per month and reduced the recipient's SSI benefits by $79.26 per month. The recipient then voluntarily increased her rent payments to $200 per month. The Secretary still found in-kind income in the amount of $25. The upshot was that the recipient later moved out of the house owned by her son and into a government subsidized senior citizens housing project. Again, the District Court begrudgingly upheld the Secretary's action on the basis of *Antonioli*.

*Styles v. Harris*, 503 F.Supp. 125 (D.Md. 1980), is a case in which the United States District Court for the District of Maryland upheld the Secretary's determination of in-kind income. In *Styles*, the recipient rented an apartment from her son for $80 per month. The current market value of that apartment was $100 per month, and the Secretary held that the difference between what the recipient was paying for the apartment and its current market value, *i. e.*, $20, constituted in-kind income. In affirming the Secretary, the District Court concluded that the regulations involved did not contravene the enabling legislation and rejected the contention that the in-kind income was not actually available to the recipient.

In *Wynn v. Harris*, 494 F.Supp. 878 (W.D. Tenn.1980), the recipients lived in a home owned by their children and paid no rent, although they were to pay upkeep expenses. The Secretary found in-kind income and, on review, the District Court affirmed. In thus affirming, the District Court concluded that the regulation in question is reasonably related to the purposes of the relevant statutory provisions and is neither arbitrary nor irrational. The District Court rejected the argument that the in-kind rent subsidy was not "actually available" to the recipients by

declaring that when a person receives an item of support at a price below what he would pay in the market place, assuming something other than an arms-length transaction, "he receives an obvious benefit."

In *Jackson v. Harris*, No. S 79–213 (N.D. Ind. Jan. 15, 1981), the recipient was renting a home from her sister for $145 per month. The sister contacted the Social Security Administration to inquire as to whether the recipient's SSI benefits could be raised so that the sister could, in turn, raise the rent on the home to $250 per month, which the sister said was the fair rental value on the home. Based on the sister's representation, the Social Security Administration determined that the recipient was receiving in-kind income in the amount of $105 per month, which meant that the recipient was no longer eligible and her SSI benefits were terminated. On review, the District Court, in an unpublished opinion, affirmed the Secretary's action. In so doing, the District Court held that the specific regulation involved was not contradictory to other regulations, or to the underlying statute.

In *Buschmann v. Harris*, Civil No. 78–622 (D.Ore. March 11, 1980), the recipient lived alone in a single-family dwelling owned by his son, to whom he paid rent of $80 per month. The Secretary found that the current market value of the house was $145, and that the difference between the rent actually paid and the current rental value of the house constituted in-kind income. It was on this basis that recipient's SSI benefits were terminated. On review, the District Court, in an unpublished opinion, reversed the Secretary's decision, but on a ground not at issue here. Notwithstanding its reversal of the Secretary, the court did hold, however, that 20 C.F.R. § 416.1125(d) was not inconsistent with either the statutory definition of unearned income, 42 U.S.C. § 1382a(a)(2)(A) (1976) or with 20 C.F.R. § 416.1120 (1980). The latter regulation states: "In determining the amount of unearned income the amount actually available to the individual is considered." In this regard, the District Court rejected the argument that an SSI recipient does not

have income "actually available" when he pays less than the current market value for the basic necessities of life. In so doing, the District Court opined that an SSI recipient who obtains shelter at less than the fair rental value *does* have money available which otherwise would be spent on shelter, and that, accordingly, such saving represents money "actually available" to the recipient. The District Court reversed the Secretary on the ground that the Secretary's finding on the current rental value of the house was not supported by substantial evidence.

In *Usher v. Califano*, 506 F.Supp. 1230 (D.Mass.1981), the United States District Court for the District of Massachusetts, in an unpublished opinion, enjoined the Secretary from imputing income to an SSI recipient in an amount equal to the difference between rental payments actually made and the rental value of the property. Notwithstanding, the District Court held that the Secretary's regulations were consistent with the underlying statutory scheme. It also specifically rejected the argument that the recipients received no income which is "actually available" to them since they could not convert into cash the amount by which the fair market value of their apartments exceeded the rentals actually paid. In this connection the District Court found "that by living in apartments for which they pay less than market value, plaintiffs receive a benefit which is applied directly to meeting their need for adequate housing." The ground relied on by the District Court for enjoining the Secretary from finding in-kind income was that the regulation, as applied, permitted classifications without any rational basis and violated the equal protection component of the Due Process clause of the Fifth Amendment.

In *Nunemaker v. Harris*, Civil No. 79–170 (M.D.Pa. Dec. 2, 1980), the recipient lived in a mobile home owned by her son-in-law for which she paid $50 per month, as well as paying for utilities and maintenance expenses. The Secretary found that the current fair rental value was $150 per month, and on this basis attributed to the recipient

unearned in-kind income. On review, the District Court, in an unpublished opinion, reversed the Secretary on the ground that the Secretary's regulation, though consistent on its face with the statute, had been applied in an invidiously indiscriminatory manner.

■ As indicated, the trial court's Memorandum Opinion and Order in the instant case appears as *Kimmes v. Califano,* 472 F.Supp. 474 (D.Colo.1979). The basis for the trial court's decision was narrow. The trial court did *not* hold that either the underlying statute or the implementing regulations were constitutionally deficient, either on their face or as applied. In a supplemental brief, counsel for Mrs. Kimmes suggests that the statute and regulations are being unconstitutionally applied, basing their suggestion on *Nunemaker.* In this regard we, like the trial court, perceive no constitutional infirmity.

■ The District Court in the instant case also found that the Secretary's regulations were themselves consistent with the underlying legislation. We are in accord. The trial court based its ruling on the proposition that where a recipient of welfare benefits pays no rent on a mobile home furnished to her by her daughter, but does pay certain expenses in connection with her otherwise free use of the mobile home, *no* in-kind income is received on account of the fact that the current rental value of the mobile home exceeds the expense incurred, and paid, by the recipient. In so holding, the trial court emphasized that *all* income, including in-kind income, must be "actually available" to the welfare recipient and that

such actual availability did not exist in the present case.[4] We do not agree with such reasoning.

The statute involved, 42 U.S.C. § 1382a(a)(2)(A), provides in pertinent part that income means both earned income and unearned income, and that unearned income includes support and maintenance furnished "in cash or kind." In our view, the statute is clear and encompasses the present facts. The Secretary's regulations are consistent with the statute and they, too, encompass the present rent arrangement between Mrs. Kimmes and her daughter.

■ The "actually available" language does not appear in the statute here involved. That phrase does appear in 20 C.F.R. § 416.1120, which provides that in determining the amount of unearned income, the amount "actually available" to the individual is to be considered. We do not agree, however, with the construction which the trial court has given the phrase "actually available." We are of the view that the difference between what Mrs. Kimmes paid as expenses in connection with her otherwise rent-free use of the trailer and the current rental value of the trailer does represent in-kind income which is actually available to her. Such was the holding in *Antonioli, Styles, Wynn, Buschmann,* and *Usher.* We agree with the rationale of those cases and hold that the economic benefits received by Mrs. Kimmes from her daughter in the form of rent-free housing, after making adjustment for certain charges which Mrs. Kimmes paid, constitute in-kind income which is actually available to her. The fact that such benefit

---

4. The lower court stated that the applicable rule of law is that "income, in-kind or otherwise, must be 'actually available' to the welfare recipient in order for it to be counted against his or her eligibility or level of benefits." 472 F.Supp. at 476. In so holding, the court relied on Supreme Court and lower federal court decisions dealing with other welfare programs, primarily Aid to Families With Dependent Children (AFDC).

We note, however, that, for the most part, the AFDC cases involved state schemes for administering AFDC benefits, where the state programs conflicted with the provisions of the

Social Security Act setting up the federally funded AFDC program. For a summary of the holdings in three AFDC cases decided by the Supreme Court, see *Van Lare v. Hurley,* 421 U.S. 338, 344–48, 95 S.Ct. 1741, 1746–48, 44 L.Ed.2d 208 (1975).

In this case, unlike the AFDC cases, there is no conflict between federal and state laws, since only the federal scheme for administering benefits is challenged. Furthermore, the holding of the AFDC cases cannot be construed to be so broad as to require that an "actually available" rule be applied to every federal welfare benefits program.

is not in cold hard cash is of no moment. We are dealing here with unearned income *in kind.*

Judgment reversed and case remanded with directions to enter judgment in favor of the Secretary.

## APPENDIX I

42 U.S.C. § 1382a(a) (1976) provides in pertinent part:

§ 1382a.  Income;  definition of earned and unearned income; exclusions from income

(a) For purposes of this subchapter, income means both earned income and unearned income; and—

(1) earned income means only—

(A) wages . . .

(B) net earnings from self-employment . . . and

(2) unearned income means all other income, including—

(A) support and maintenance furnished in cash or kind; except that (i) in the case of any individual . . . living in another person's household and receiving support and maintenance in kind from such person, the dollar amounts otherwise applicable to such individual . . . shall be reduced by 33⅓ percent in lieu of including such support and maintenance in the unearned income of such individual . . .

## APPENDIX II

20 C.F.R. § 416.1125(d) (1980) provides in pertinent part:

(d) *Valuation of support and maintenance for individuals in household situations.* When an eligible individual . . . lives in a household (i. e., is not in an institution), the reduction in the payment standard described in paragraph (b) of this section is inapplicable and the provisions of §§ 416.1185 . . . and 416.1190 do not apply, any support and maintenance received in kind but not received in lieu of cash wages . . . is unearned income. In such cases effective with payments for December 1974, the maximum value of

such support and maintenance is presumed to be that amount which, for an individual or a couple with no other income, would result in payment at two-thirds of the applicable payment standard; i. e., the value is presumed to be one-third of the payment standard, plus the exclusion applicable to unearned income. This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value. This rule will apply in the following circumstances:

. . . .

(2) When an eligible individual . . . lives in his own household, including a commercial establishment, and receives support and maintenance in kind.

20 C.F.R. § 416.1102 (1980) provides:

§ 416.1102  Income defined

(a) *Meaning of income.* The term "income" . . . means the receipt by an individual of any property or services which he can apply, either directly or by sale or conversion, to meeting his basic needs for food, clothing, and shelter.

. . . .

(c) *Unearned income.* The term "unearned income" means all income that is not included in the definition of "earned income" (see §§ 416.1125–416.1138).

20 C.F.R. § 416.1120 (1980) provides in pertinent part:

§ 416.1120  Availability of unearned income.

In determining the amount of unearned income the amount actually available to the individual is considered. The gross amount is reduced by any ordinary and necessary expenses incurred in getting or receiving the unearned income.