**NUNEMAKER, Isabelle, Appellee,**

v.

**SEC. HEW USA, Patricia Roberts Harris, Secretary of Health, Education and Welfare, and her successor or successors in office, Appellant.**

No. 81–1282.

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 1982.

Decided June 3, 1982.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Joseph F. Cimini, Sp. Asst. to U. S. Atty., Scranton, Pa., Carlene V. McIntyre (argued), Anthony J. Steinmeyer, Washington, D. C., for appellant.

Jonathan Butterfield (argued), Williamsport, Pa., Peter Brooks Macky, Sunbury, Pa., for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and WEINER,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

*INTRODUCTION*

This appeal is from a judgment of the United States District Court for the Middle District of Pennsylvania vacating a decision of the Secretary of Health and Human Services which reduced plaintiff's benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c (1976) (the "statute"). The district court held that 20 C.F.R. § 416.1125(d) (1980),[1] which includes, as countable unearned income for purposes of the SSI program, support and maintenance received for less than fair market value, is inconsistent with the Social Security Act and unconstitutional as applied to plaintiff. We will reverse.

*FACTS*

In June of 1978, plaintiff Isabelle Nunemaker, a recipient of SSI benefits, received notice from the Secretary of Health and Human Services ("Secretary") that her benefits would be reduced by $83.13 per month because she was receiving unearned, in-kind income in the form of a private rental subsidy. Nunemaker was living in a mobile home owned by her daughter and son-in-law for which she paid $50.00 per month rent; the Secretary determined that the current rental value of the mobile home was $150.00 per month.[2] Pursuant to section 416.1125(d) and other relevant regulations, which count shelter provided for less than current market value as income to the SSI claimant, the Secretary determined that Nunemaker received a rental subsidy of $100.00 per month (*i.e.*, the difference between the current market value and the rent actually paid for the mobile home). The Secretary did not, however, reduce Nunemaker's monthly benefits by the amount of $100.00. Rather, because section 416.1125(d) provides that the value of in-kind support and maintenance "is presumed to be one-third of the [monthly] payment

---

* Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Section 416.1125(d) provides in part:
   (d) *Valuation of support and maintenance for individuals in household situations.* When an eligible individual ... lives in a household (i.e., is not in an institution), ... any support and maintenance received in kind but not received in lieu of cash wages ... is unearned income. In such cases effective with payments for December 1974, the maximum value of such support and maintenance is presumed to be that amount which, for an individual or a couple with no other income, would result in payment at two-thirds of the applicable payment standard; i.e., the value is presumed to be one-third of the payment standard .... This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value. This rule will apply in the following circumstances:

   . . . . .

   (2) When an eligible individual ... lives in his own household, including a commercial establishment, and receives support and maintenance in kind.

2. Plaintiff conceded below that this valuation was based on substantial evidence. Appendix at 48.

standard," Nunemaker's benefits were reduced by $83.13.[3]

Plaintiff claims that section 416.1125(d) is not a valid implementation of the Social Security Act for two reasons: a) because it deprives her of the benefit of a bargain struck for the provision of shelter, and b) because the benefit she received through her reduced rental is not "actually available" to her. Plaintiff further argues that the regulation is unconstitutional as applied to her, since by failing to take account of her actual contribution to rent, it treats her identically with a claimant in the same position who makes no such contribution,[4] and it arbitrarily and irrationally treats her differently from similarly situated claimants who, because they live in federally subsidized housing, are exempt from its operation.

The district court did not discuss plaintiff's first two arguments. With respect to the third argument, the court did not decide whether the failure to take account of plaintiff's contribution to her rent was in itself improper. Rather, the court ruled that the regulation improperly discriminated between plaintiff and other claimants who contributed nothing to their rent:

> Based upon Defendant's determination that the current market value of the premises rented by Plaintiff was $150.00, [and plaintiff's $50.00 contribution to her rent,] income of $100.00 was imputed to her. Yet, since the regulations provide that benefits not be reduced by greater than 33⅓%, and $100.00 is greater than 33⅓% of Plaintiff's benefits, Plaintiff is treated in precisely the same manner as would be an S.S.I. recipient living in simi-

lar circumstances who made absolutely no contribution to her own domicile maintenance. This Court is unable to reconcile this disparity in the treatment of S.S.I. recipients to whom the unearned income provisions apply with the purposes of the Act, and therefore concludes that Defendant's application of § 462.1125(d) [sic] in this manner is both invidiously discriminatory and patently arbitrary.

Appendix at 55. Regarding plaintiff's fourth argument, the district court agreed that there was no rational basis for distinguishing between claimants in plaintiff's position and those living in federally subsidized housing, whose rental subsidies are exempt from the operation of the benefit-reducing regulation. This, the court held, rendered application of the regulation to plaintiff unconstitutional. Appendix at 54.

We cannot accept plaintiff's arguments concerning the applicability of the Secretary's regulations to her situation. We also cannot agree with the district court's conclusion that the regulation is unconstitutional. We believe that the Secretary's regulations validly implement the statute, that the statute and regulations were properly applied to plaintiff, and that the regulations are rationally related to a legitimate governmental objective. Therefore, the judgment of the district court will be reversed.

*BACKGROUND*

The SSI program[5] guarantees a minimum, subsistence level income to the aged, blind and disabled. *See* S.Rep.No.92–1230, 92d Cong., 2d Sess. 383 (1972); H.R.Rep.No. 92–231, 92d Cong., 1st Sess. 4, *reprinted* in

---

**3.** At the time, the presumed maximum value was computed by taking one-third of Nunemaker's monthly benefit rate of $189.40, or $63.13, and adding $20.00 to reach $83.13. The $20.00 is added pursuant to a statutory section not relevant to the instant case. 42 U.S.C. § 1382a(b)(2)(A).

The one-third presumed maximum value places only a *ceiling* on the reduction of benefits. A claimant is given the opportunity to show that the actual value of in-kind support and maintenance is *less than* one-third of the applicable monthly payment standard. 20 C.F.R. § 416.1125(d) (1980).

**4.** Plaintiff argued in the court below that the regulation is arbitrary and irrational solely because it failed to take account of her contribution to rent. Appendix at 49. While not deciding this precise issue, the district court held that the regulation is arbitrary and irrational insofar as it treated plaintiff identically to others who made *no* contribution to rent. Appendix at 35.

**5.** 42 U.S.C. §§ 1381–1383c (1976).

1972 U.S.Code Cong. & Ad.News 4989, 4992. In order to be eligible for payments, a claimant's income or resources [6] may not exceed statutorily prescribed limits. 42 U.S.C. § 1382(a). The basic entitlement, a flat rate governed by a statutory formula, is paid to every eligible claimant, but is reduced by the amount of "countable" income that the individual receives from other sources. 42 U.S.C. §§ 1381a, 1382a(b). In defining countable income, the statute includes earned and unearned income, in cash or in kind, although certain narrow categories of income are excluded. 42 U.S.C. § 1382a(a)–(b).

In order to implement the statutory mandate to reduce benefits by the amount of unearned income in kind received by the claimant, the Secretary has promulgated regulations which further define income as "the receipt by an individual of any property or service which he can apply, either directly or by sale or conversion, to meeting his basic needs for food, clothing, and shelter." 20 C.F.R. § 416.1102(a) (1980). Section 416.1120 further provides that in determining the amount of unearned income, "the amount *actually available* to the individual is considered. The gross amount is reduced by any ordinary and necessary expenses incurred in getting or receiving the unearned income." (Emphasis added.) Several regulatory provisions govern the calculation of unearned income received in the form of housing. Section 416.1125(a) provides:

> General. Unearned income includes support and maintenance furnished in cash or in kind .... Support and maintenance in kind encompasses food, clothing, and shelter or any portion of any or all of such items. Unless otherwise specified herein, the value of in-kind support and maintenance refers to its current market value.

**6.** "Resources" are defined to include most assets; property essential to self-support, including an individual's home, is exempted from the statutory compilation. 42 U.S.C. § 1382b.

**7.** Section 416.1125(d) has also been upheld in several district court decisions. *See Herndon*

20 C.F.R. § 416.1125(a) (1980). The regulations define precisely how food or shelter received "in kind" is to be valued in a variety of situations, including the case of a claimant who lives in his own household or the household of another. 20 C.F.R. § 416.-1125(d)(1)–(2) (1980). Most importantly, the regulations provide for the situation reflected in the instant case—the payment by an SSI claimant of rent in an amount less than fair market value:

> When an eligible individual ... lives in his own household, including a commercial establishment, and receives support and maintenance in kind ... the maximum value of such support and maintenance is presumed to be ... one-third of the payment standard [*i.e.*, of the monthly benefit payment] .... This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value.

20 C.F.R. § 416.1125(d), (d)(2) (1980). Finally, Congress has exempted from the operation of section 416.1125(d) unearned income received by SSI claimants in the form of federally subsidized housing. Housing Authorization Act of 1976, Pub.L.No.94–375, § 2(h), 90 Stat. 1067, 1068 (1976).

*DISCUSSION*

Three federal courts of appeals have considered the question whether 20 C.F.R. § 416.1125(d) (1980) is a valid implementation of the Social Security Act, or, if so, whether its application is unconstitutional. In each case, the regulation was upheld. *Usher v. Schweiker*, 666 F.2d 652 (1st Cir. 1981); *Kimmes v. Harris*, 647 F.2d 1028 (10th Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 400, 70 L.Ed.2d 214 (1981); *Antonioli v. Harris*, 624 F.2d 78 (9th Cir.1980).[7]

*v. Harris*, No. S–79–462 (E.D.Cal. Dec. 8, 1980); *Young v. Califano*, No. S–79–225 (E.D.Cal. Dec. 8, 1980); *Styles v. Harris*, 503 F.Supp. 125 (D.Md.1980); *Wynn v. Harris*, 494 F.Supp. 878 (W.D.Tenn.1980); *Jackson v. Harris*, 86 F.R.D. 452 (N.D.Ind.1980); *Buschmann v. Harris*, No. 78–622 (D.Ore. Mar. 11, 1980). *But see*

We will focus our discussion on an analysis of the *Usher* decision, which fully treats the issues involved here.

### Statutory Analysis

We turn first to the question whether the regulations validly implement the statute. The Supreme Court has enunciated the standard by which implementing regulations must be measured:

> The question before us is whether this interpretative regulation constitutes a permissible gloss on the [enabling legislation] by the Secretary, in light of the [enabling legislation's] language, structure, and legislative history. Our inquiry is informed by an awareness that the regulation is entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the [enabling legislation].

*Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980).

In *Usher v. Schweiker*, 666 F.2d 652 (1st Cir. 1981), the First Circuit upheld the application of the statute and regulations in what it termed the "reduced-rental" situation. 666 F.2d at 654. As in *Kimmes, Antonioli,* and the instant case, each of the five claimants in *Usher* lived in a dwelling, owned by his or her relative, for which he or she paid less than the fair market rental value. The Secretary charged each with the receipt of unearned income in kind, and benefits were reduced in accordance with 20 C.F.R. § 416.1125(d).

Considering cross-motions for summary judgment, the district court in *Usher* ruled 1) that the regulation at issue is authorized by statute, but 2) that it unconstitutionally discriminated between those in the plaintiffs' circumstances and others who either have formal leases[8] or who live in federally subsidized housing. The court of appeals agreed with the lower court's first conclusion and disagreed with the second; it therefore reversed the decision and upheld the Secretary's actions.

Before section 416.1125(d) was promulgated, a House conference report evidenced Congress's understanding of the reduced-rental practice:

> Under the SSI program for the aged, blind and disabled, *all forms of income— including room and board furnished for less than cost*—are used to reduce the amount of benefits payable.

H.R.Conf.Rep.No.93–1407, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Ad.News 5992, 5995, 5996 (emphasis added). After the regulation was promulgated, a House report again recognized the Secretary's practice without criticism. H.R.Rep. No.94–1091, 94th Cong., 2d Sess. 21 (1976). Most significantly, Congress created a specific exemption from the operation of the regulation for rental subsidies received through federal housing assistance programs. Housing Authorization Act of 1976, Pub.L.No.94–375, § 2(h), 90 Stat. 1067, 1068 (1976).[9] In the same year, the implementing statute, 42 U.S.C. § 1382a(a)(2)(A), was twice amended, and the Secretary's interpretation of countable income was left undisturbed. Act of June 30, 1976, Pub.L.No. 94–331, § 4(a), 90 Stat. 781, 782 (1976); Act of October 4, 1976, Pub.L.No.94–455, § 2125, 90 Stat. 1920 (1976); *Usher*, 666 F.2d at 658. Finally, the Secretary's counting as unearned income the receipt of shelter for less than market value was mentioned without criticism in a 1977 Senate report. Staff of Senate Comm. on Finance, 95th Cong., 1st Sess., Staff Report on the Supplemental Security Income Program 72–75 (Comm.Print.1977). The *Usher* court concluded:

8. Kimmes v. Califano, 472 F.Supp. 474 (D.Colo. 1979), rev'd, 647 F.2d 1028 (10th Cir. 1981); Usher v. Califano, 506 F.Supp. 1230 (D.Mass.), rev'd, 666 F.2d 652 (1st Cir. 1981).

**8.** The *Usher* court faced the question whether the regulations impermissibly discriminated between claimants who did and those who did not have formal leases for their dwellings. 666 F.2d at 660. This issue is not relevant to the instant case.

**9.** In fact, Congress's exemption of federal housing assistance recipients provides the basis for plaintiff Nunemaker's equal protection claim, discussed *infra*.

Even if the statute were less clear, the fact that this consistent administrative interpretation has been specifically and repeatedly recognized without criticism by Congresses that have amended and revised the Act in other ways provides evidence that the Secretary's interpretation is correct. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75 [94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134] (1974). Thus, we join the other courts which have considered this issue and hold that the regulation is authorized by statute.

666 F.2d at 658.[10]

Discussing the applicability of the income in kind provisions to the reduced-rental situation, the court faced the "actually available" argument also decided in *Kimmes*. In *Kimmes, Usher*, and in the instant case, the plaintiffs asserted that income in the form of a rental subsidy was not "actually available" to them, as required by 20 C.F.R. § 416.1120. In an analysis which paralleled that of the *Kimmes* court, the First Circuit rejected the argument:

> Plaintiffs' argument is unsound, however, for income in kind can be "actually available" to a person without being convertible into cash. When one receives food, or clothing, or shelter, one receives an actual benefit whether or not there is a market in which one might sell that benefit. Indeed, in the very statute at issue, Congress referred to one form of "in-kind" income—the provision of shelter in the home of a relative—that is ordinarily *not* convertible into cash. 42 U.S.C. § 1382a(a)(2)(A). The Secretary has embodied the ordinary English meaning of the term "actually available" when he defines "income" as the receipt of "any property or services" which the recipient can "apply *either directly or* by sale or conversion" to meet "basic need

for food, clothing, and shelter." 20 C.F.R. § 416.1102. (Emphasis added.) In this case, plaintiffs received the income "directly."

666 F.2d at 656. This analysis applies with equal force to the instant case. We therefore hold that the receipt of housing for less than market value constituted income in kind which was actually available to plaintiff.

■ Given the *Whirlpool* standard, we agree with the First, Ninth, and Tenth Circuits that the language and legislative history of the statute support the Secretary's reduction of benefits in the rental subsidy case. We also agree that the reduced rental constitutes unearned income which is "actually available" to plaintiff. We hold that the Secretary's regulations properly implement the enabling legislation, and that these regulations were appropriately applied to plaintiff's situation.

### Constitutional Arguments

Because we hold that the Secretary's regulations validly implement the statute, and are applicable to plaintiff's situation, we must decide the constitutional questions raised by plaintiff. Plaintiff challenges the regulations on equal protection grounds. In order to prevail, she must show that the classifications created by the regulations are not rationally related to a legitimate governmental objective:

> Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has a duty to intervene in the democratic process, this Court properly exercises only a limited review power over Congress, the appropriate representative body through which

---

**10.** Both the *Antonioli* and *Kimmes* courts held that the Secretary's regulations validly implemented the statute. *Kimmes*, 647 F.2d at 1033; *Antonioli*, 624 F.2d at 81. The *Antonioli* decision squarely confronted a claim presented by plaintiff Nunemaker in the instant case:

> Appellant argues that applying a fair market value standard deprives him of the benefit of his bargain in acquiring inexpensive

housing. But such a bargain cannot be assumed in a father-son relationship. Unearned income presumably would not arise, however, as a consequence of an SSI recipient's having negotiated rent at less than market value in an arm's length transaction. 624 F.2d at 80 n.3. We agree that the Secretary's regulation does not improperly deprive plaintiff of the "benefit of [her] bargain."

the public makes democratic choices among alternative solutions to social and economic problems. See *San Antonio School District v. Rodriguez*, 411 U.S. 1 [93 S.Ct. 1278, 36 L.Ed.2d 16] (1973). At the minimum level, this Court consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives. See, *e.g. Dandridge v. Williams*, 397 U.S. 471 [90 S.Ct. 1153, 25 L.Ed.2d 491] (1970); *Mathews v. deCastro*, 429 U.S. 181 [97 S.Ct. 431, 50 L.Ed.2d 389] (1976).

*Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981). We turn therefore to an analysis of plaintiff's equal protection claims under the rational basis standard.[11]

### A. *Contribution to Rent*

Plaintiff argued below that the regulation arbitrarily and irrationally failed to take account of her actual contribution to rent. Because plaintiff paid $50 each month for housing worth $150, the Secretary charged her with the receipt of $100 in unearned income in kind each month. However, since section 416.1125(d) places upon this income a presumed maximum value ("PMV") of one-third of monthly benefits, and since the $100 in unearned income exceeds the PMV, plaintiff's benefits were reduced by approximately $80. Plaintiff notes, correctly, that she would suffer the same $80 reduction if she made *no* contribution to rent. Thus, she argues, she had $50 less to spend on non-housing items per month than she would if she made no rental payment. Plaintiff asserts that her $80 reduction in benefits should itself be re-

duced by $50 to reflect her actual contribution to rent.

The district court ruled that the regulation improperly discriminated between plaintiff and other claimants who contribute nothing to their rent. Thus, the district court did *not* rule that the regulation treated similarly situated claimants unequally; rather, it ruled that the regulation treated differently situated claimants uniformly.

■ We cannot agree that the Secretary's uniform application of section 416.-1125(d) constitutes an equal protection violation. Following the congressional mandate expressed in the enabling statute, the Secretary promulgated a regulation which tends to equalize claimants who do and those who do not receive unearned income in kind. Unfortunately, this equalizing step has the effect of highlighting inequalities *among* claimants who receive such income.[12] However, section 416.1125(d) is clearly "rationally related to [the] legitimate governmental objective[]"[13] of equalizing SSI claimants who receive in-kind incomes with those who do not. We hold that the Secretary's failure further to classify among claimants who receive in-kind income does not constitute an equal protection violation.

### B. *Exemption of Federal Housing Assistance*

■ The *Usher* court also decided the question raised by plaintiff Nunemaker's second equal protection claim: whether Congress's exemption of reduced-rental income received by federal housing assistance recipients from the operation of the "income in kind" provision constitutes an equal protection violation. The *Usher* court concluded, and we agree, that it does not.

---

11. In her brief, plaintiff generally acknowledges that the rational-basis standard applies here. Appellee's Brief at 15–20. However, she contends that since the regulation at issue interferes with a fundamental right by "imping[ing] on personal choices in the realm of family living arrangements," heightened scrutiny should be applied. Appellee's Brief at 22. Heightened scrutiny might be applicable if the regulation impermissibly impinged on family living arrangements. *See, e.g., Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). We agree with the *Usher* court,

however, that no such impingement exists here. *See Usher*, 666 F.2d at 658 n.15.

12. In a thorough discussion, the *Usher* court accurately illustrates how varying contributions from relatives combine with the PMV to produce widely differing economic positions among claimants. *Usher*, 666 F.2d at 659–60.

13. *Wilson*, 450 U.S. at 230, 101 S.Ct. at 1080. *See also Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

In raising her claim, plaintiff purportedly attacks the *Secretary's* actions in applying the income in kind provisions to her, while not applying them to unearned income in the form of federal housing assistance. In fact, however, the exemption of this income was brought about by act of Congress in the face of the Secretary's uniform application of the income in kind provisions to all SSI recipients. In 1976, Congress amended the United States Housing Act of 1937, which provided low-income assistance known as "Section 8 housing." The amendment provided:

> Notwithstanding any other provision of law, the value of any assistance paid with respect to a dwelling unit under [federal housing assistance programs] ... may not be considered as income or a resource for the purpose of determining ... the amount of the benefits payable to ... [an SSI recipient].

Housing Authorization Act of 1976, Pub.L. No.94–375, § 2(h), 90 Stat. 1067, 1068 (1976). A House report clearly shows that Congress understood the Secretary's application of the income in kind provisions when it created this exemption:

> [The SSI program] establishes the requirement, as interpreted by HEW, that in-kind assistance to SSI recipients such as Section 8 housing assistance will be counted as "unearned income", requiring a compensating reduction in SSI assistance payments. By HEW regulation, until the actual amount of housing assistance is documented, a reduction of one-third of the monthly SSI payment will be made in each individual case.
>
> This means that an SSI recipient residing in Section 8 housing will suffer a reduction in SSI payments of one-third and then be charged a rental fee of not more than 25% of his remaining income. No other group of low-income persons, on

or off public assistance rolls, suffer this extreme cost for accepting Federal Housing assistance. Although SSI recipients are among the lowest of income levels, and in greatest of need, they are effectively denied use of the Section 8 program because of this regulation. All others receiving Section 8 assistance pay rents not to exceed 25% of income.

H.R.Rep.No.94–1091, 94th Cong., 2d Sess. 21 (1976).

Given this background, the *Usher* court rejected the claim raised by plaintiff here:

> [T]he difference in treatment at issue here reflects a rational effort by Congress to achieve a legitimate legislative objective. As the House Report explicitly states, Congress feared that the "income in kind" provisions discouraged SSI recipients from taking advantage of Section 8 housing. Moreover, it felt that those provisions were unfair as between those Section 8 housing recipients who did receive SSI assistance and those Section 8 housing recipients who did not receive SSI assistance. Congress passed the exemption in order to make Section 8 housing more attractive to SSI recipients and to produce greater fairness as among all Section 8 housing recipients. We cannot say that this legislative judgment is unreasonable.

666 F.2d at 661. As the court then noted, the exemption, when viewed from the perspective of all SSI recipients rather than all Section 8 recipients, does give some advantage to those who benefit from both programs. But, the *Usher* court held, "it was not irrational, given the Section 8 housing objectives, to create that advantage." *Id.*[14]

We agree with this conclusion. As the court noted, if Congress is faced with a constitutional requirement that it cannot "offer intended beneficiaries of Program A any special advantage unless it also offers it

---

**14.** This conclusion is supported by the Supreme Court's decision in *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). *Wilson* involved an equal protection challenge to a statute which distinguished among SSI claimants living in public institutions by conditioning the receipt of certain SSI benefits upon the receipt of Medicaid by the claimant. The congressional preference of Medicaid recipients was upheld by the Court. The legislative history and the effect of the statute in *Wilson* parallel that of the Section 8 exemption in the instant case.

to those who are outside Program A, it might simply choose not to offer the special benefit—a result that would work to no one's advantage." 666 F.2d 661. Congress's express intent in enacting the exempting amendment was to make it easier for SSI claimants to enter federally subsidized housing. There is no reason why Congress should be constitutionally required at the same time to make it easier for SSI claimants to enter into subsidized rental arrangements with private parties. Nor is it incumbent upon Congress to explain why it is not extending exemption to all other categories of SSI claimants. Congress expressed a rational basis for exempting Section 8 SSI claimants, and explicitly provided a justification for distinguishing those exempted from other SSI claimants, such as plaintiff. Given Congress's broad discretion in legislating in this area, as we have outlined, we cannot say that the statute, or the Secretary's actions implementing it, violates plaintiff's right to equal protection.

For the foregoing reasons, the judgment of the district court will be reversed.