■ In the Matter of YVONNE HENNY, Petitioner, v NOAH WEINBERG, as Commissioner of the Rockland County Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Commissioner of Social Services, dated

June 22, 1979 and made after a statutory fair hearing, which affirmed a determination of the local agency that discontinued petitioner's public assistance grant in the aid to dependent children category. Petition granted, determination annulled, on the law, without costs or disbursements, and respondents are directed to reinstate in full petitioner's public assistance grant, and to pay back so much of the grant as has been withheld from her, if any. Petitioner and her three minor children received a public assistance grant in the aid to dependent children category (ADC). On April 3, 1979 the local social services agency determined to discontinue petitioner's assistance on the grounds that her husband was living in her household and that this fact had not been reported to the agency. Petitioner appealed from this determination to the State commissioner, and a fair hearing was held on May 8, 1979. At the hearing, at which petitioner appeared *pro se,* the agency representative presented a returned post office inquiry which indicated that petitioner's husband used her residence as a mailing address. The agency also adduced testimony by one of its investigators that in September, 1978, he had interviewed petitioner's husband at her home and in petitioner's presence. The investigator testified that during this interview petitioner's husband had admitted that he was residing in her household. He also testified that over the years neighbors had reported to other investigators that petitioner's husband lived with her. Finally, the investigator admitted that at the September, 1978 interview petitioner's husband had not indicated how long he had been or would be living with petitioner, and that he, the investigator, had not seen any physical evidence in petitioner's home to show that her husband resided there. On petitioner's case, she testified that the interview with her husband, as related by the agency investigator, never occurred. She stated that at no time had her husband been questioned by this investigator at her home and in her presence. Thus, she had no knowledge of any admission by her husband that he resided with her, a fact which was categorically denied. Furthermore, petitioner testified that she and her husband were separated and that he lived with his sister in The Bronx. Moreover, she produced a letter from her sister-in-law verifying that fact. The State commissioner concluded that the credible evidence established that petitioner's husband had admitted to the agency investigator, in petitioner's presence, that he was living in her household. This conclusion was reached because petitioner's contention that this interview never took place was "simply not credible". The basis for rejecting petitioner's contention was a finding of fact as to "her continued refusal during the past few months to allow [the] agency's investigators to interview her husband, or to submit any verification of her husband's alleged residence to the agency." A review of the fair hearing transcript reveals no evidence of any "continued refusal" by petitioner to allow the agency to interview her husband or to submit verification of his residence. In fact, no evidence was adduced by the agency to the effect that it had even requested such information. Thus, the State commissioner's finding that petitioner had continually refused, what appears to have been in the commissioner's estimation, requests by the agency for information, is totally unsupported by the record of the fair hearing. The State commissioner, in reaching her determination that petitioner's husband was residing in her household and that she had failed to report this to the agency, had before her the following evidence: (1) a returned postal inquiry, indicating that petitioner's husband used her residence as a mailing address; (2) a hearsay statement by her husband that he did reside with petitioner; (3) hearsay statements by unknown agency investigators that neighbors had reported petitioner's husband as residing with

her; and (4) evidence, dehors the record, that petitioner had continually refused to make known to the agency her husband's whereabouts, which evidence was used to discount, for lack of credibility, petitioner's denial of her husband's residence with her and of his alleged admission to such residence, purportedly made to an agency investigator in petitioner's presence. The postal inquiry and the evidence of uncorroborated hearsay statements do not constitute the substantial evidence upon which an administrative decision must be based. (See *Matter of Hagood v Berger,* 42 NY2d 901, 903; *Matter of Mandy v Blum,* 67 AD2d 1002; *Matter of Fore v Toia,* 60 AD2d 913; *Matter of Ayala v Toia,* 59 AD2d 739.) "In addition, there was no proof, hearsay or otherwise, as to petitioner's husband's willingness to support his family or as to the amount of his earnings (see *Holmes v Wyman,* 40 AD2d 50)." (See *Matter of Fore v Toia, supra.)* Furthermore, the commissioner improperly relied upon information dehors the record in reaching her determination. (See *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181.) For all of these reasons, the determination cannot be upheld. Moreover, even if petitioner willfully withheld information of her husband's residence, her misconduct cannot deprive her minor children of assistance without a showing of a present lack of need. (See *Matter of Gunn v Blum,* 48 NY2d 58; *Matter of Gutierrez v Blum,* 73 AD2d 690.) Hopkins, J.P., Titone, Mangano and Rabin, JJ., concur.