■ In the Matter of DORENE STEWARD, Petitioner, v JAMES A. KRAUSKOPF, as Commissioner of the Department of Social Services of the City of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Commissioner of Social Services, dated September 3, 1981 and made after a statutory fair hearing, which affirmed a determination of the local agency discontinuing petitioner's grant of public assistance in the category of aid to dependent children. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. The determination to discontinue petitioner's grant of public assistance on the ground that the petitioner's husband, the father of her children, was residing in the household, is supported by substantial evidence appearing on the record as a whole, including, *inter alia,* the petitioner's admissions at the fair hearing. The determination must therefore be confirmed and the proceeding dismissed, as the petitioner fails to satisfy the statutory criteria of categorical eligibility for aid to dependent children set forth in section 349 (subd B, par 1) of the Social Services Law (see US Code, tit 42, § 606, subd [a]; *Matter of Wright v D'Elia,* 83 AD2d 951; *Matter of Hairston v Toia,* 79 AD2d 1011). Our confirmance of the State commissioner's determination cannot, however, affect the petitioner's right to apply for benefits under section 158 or 349 (subd B, par 1-a) of the Social Services Law (see, also, US Code, tit 42, § 607, subd [a]), or to reapply for benefits under section 349 (subd B, par 1) of the Social Services Law should the circumstances warrant it. Mangano, J. P., Thompson and Gulotta, JJ., concur.

Gibbons, J., dissents and votes to grant the petition to the extent of annulling the determination under review and directing the respondents to reinstate the grant of public assistance in question, retroactively to the date of

termination, with the following memorandum: The petitioner and her two children were recipients of public assistance in the form of aid to dependent children (ADC). On June 18, 1981 the New York City Department of Social Services (the local agency) determined to discontinue petitioner's grant of public assistance on the ground that her husband, the father of her two children, was living in the household. Petitioner made a timely request for a fair hearing, which was held on July 16, 1981. Petitioner was unrepresented at the hearing. The local agency presented two reports from its employees, dated June 5, 1981, and June 24, 1981, respectively. The employees who wrote those reports did not testify at the hearing. According to the June 5 report, petitioner was interviewed on June 4, 1981, at which time she informed the local agency employee that her husband had moved into the family's apartment in April, 1981. Although he was unemployed and was a participant in a methadone program, he was able to contribute $10 a week to the family's finances. The report recommended that petitioner's grant be adjusted to reflect this $10 contribution. The report was not signed by petitioner. On June 24, 1981 petitioner was interviewed in the income maintenance center. The report of this interview, also not signed by petitioner, indicates that she informed the local agency employee that her husband was no longer living with the family. The employee then telephoned petitioner's landlady, Dorothy M. Berry, and asked for Mahlon Steward, petitioner's husband. A man then came to the telephone and identified himself as Mahlon Steward. The local agency presented no witnesses at the fair hearing. Petitioner testified that she and her children live in the upstairs apartment of a two apartment house. Her landlady lives downstairs. She stated that her husband moved into the household on April 24, 1981 and, from time to time, contributed small sums of money, when available. However, he was not working and was on methadone. He moved out sometime in May and went to live with his mother, Jane Steward, on "Hillsburn Street". Petitioner stated that she could not live with her husband because he was "always like making trouble". In fact, she had gone to Family Court because of his behavior. Attached to the petition in this proceeding is an order of protection of the Family Court, Queens County, dated July 7, 1981 obtained by petitioner against her husband. As for the June 24, 1981 telephone call petitioner stated that her husband was in her home that day but was not living there. Petitioner presented a letter from her landlady stating that Mr. Steward did not live in petitioner's apartment. By determination dated September 3, 1981, the respondent Commissioner of the New York State Department of Social Services affirmed the local agency's determination to terminate assistance to petitioner and her children, on the ground that petitioner's testimony was "unworthy of belief" and that the credible evidence established that the husband had been residing in the household since April 24, 1981. ADC, a joint Federal and State program, is designed to provide assistance to families with dependent children (US Code, tit 42, § 601 *et seq.*). "The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent * * * and, (2) who is * * * under the age of eighteen" (US Code, tit 42, § 606, subd [a]; see Social Services Law, § 349, subd B, par 1). A child is "needy" when the income and resources actually available for his or her support fall below certain standards established by law (Social Services Law, § 131-a). When the local agency seeks to terminate ADC benefits, it bears the burden of proving that the recipient is no longer eligible (*Allen v Blum,* 85 AD2d 228, 236). By the department's own regulations, termination procedures may only be initiated after the local agency has conducted an investigation (18 NYCRR 351.22 [d]; *Allen v Blum, supra,* pp 232-233). A determination terminating assistance will not be con-

firmed on judicial review unless the record indicates that the local agency has established by substantial evidence that the recipient is no longer eligible (*Matter of Rosenfeld v Blum,* 82 AD2d 559, 571). "[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181). The proof in this case does not rise to the level of substantial evidence. The local agency's "investigation" can hardly be termed such. No field investigation was made. A caseworker did not visit petitioner's apartment or interview her husband, the landlady, or the neighbors. No effort was made to contact the husband's mother, with whom he allegedly lives. No postal inquiry was conducted. The local agency presented no witnesses. The proof was indeed less, in quantity and quality, than that presented by the local agency in the case of *Matter of Hagood v Berger* (42 NY2d 901), wherein the Court of Appeals found a lack of substantial evidence (see, also, *Matter of Henny v Weinberg,* 80 AD2d 831). The June 24 telephone call, while certainly evidence, is far from conclusive. It only indicates that petitioner's husband was at her home on that date. It might well be that, as petitioner indicates, he visits the home on occasion. Substantial evidence "does not rise from bare surmise, conjecture, speculation or rumor" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180, *supra*). The conclusion, based only on this telephone call, that the husband still resided in the home is bare surmise, conjecture and speculation. Rather than being the end of the local agency's investigation, the June 24 telephone call should have prompted further, outside inquiry. Even assuming that the local agency's determination that the husband lives with petitioner is supported by substantial evidence, that does not end my analysis. A needy family that is intact, that is, where both parents live with their children, may in certain cases, still be eligible for ADC where one of the parents is either unemployed (US Code, tit 42, § 607, subd [a]; Social Services Law, § 349, subd B, par 1-a) or incapacitated (US Code, tit 42, § 606, subd [a]; Social Services Law, § 349, subd B, par 1). The record indicates that petitioner's husband is unemployed and has drug problems. Before terminating the grant of public assistance to petitioner and her children, the local agency should have determined whether the family was eligible based on the father's drug problems and/or his unemployment. As already described, ADC is a joint Federal and State assistance program designed to provide benefits to needy persons who fit into a certain limited category; that is, to families with dependent children. However, our State Constitution itself "imposes upon the State an affirmative duty to aid the needy," irrespective of categorical classification (see *Tucker v Toia,* 43 NY2d 1, 8; NY Const, art XVII, § 1; see, also, *Matter of Lee v Smith,* 43 NY2d 453). Persons who meet the statutory definition of need (Social Services Law, § 131-a), but who do not fit into a category such as ADC must, pursuant to our Constitution, still be assisted. The Legislature has designed a program for all such persons, entitled "home relief" (Social Services Law, art 5, tit 3). A needy person who is ineligible for a categorical program such as ADC or who is terminated, rightly or wrongly, from such a program is, nonetheless, eligible for assistance under the home relief program (Social Services Law, § 158; see *Matter of Wasservogel v Blum,* 54 NY2d 100; *Matter of Mastan v Fahey,* 60 AD2d 304; *Matter of Darrow v D'Elia,* 54 AD2d 905). The local agency does not contend that petitioner and her family are not needy. In fact, their need has been presumptively established by their participation in the ADC program. That being the case, assuming, without conceding, that the local agency

sustained its burden of proving that petitioner and her family were not eligible for ADC, they were, nonetheless, entitled to home relief (Social Services Law, § 158). Their budget might have required some recomputation, based on actual available income and resources, but their grant of public assistance should not have been terminated. The majority's concession that petitioner and her family can submit a new application for assistance is unsatisfactory. First of all, it is inconsistent with the settled rule that an applicant for benefits bears the burden of proving eligibility, whereas once benefits have been granted, it is the local agency which must show that a discontinuance is justified (*Allen v Blum*, 85 AD2d 228, 236, *supra; Matter of Woodley v Lavine*, 54 AD2d 912). As noted, petitioner has already established that her family is needy, as evidenced by her acceptance in the ADC program. The standard of need under ADC and under home relief is the same (Social Services Law, § 131-a, subd 2). If the agency wishes to avoid a grant of assistance altogether, it must bear the burden of showing that petitioner and her children are no longer needy. Secondly, the majority's position ignores the reality of the situation. An applicant who is denied assistance and a recipient who has his or her grant terminated are both entitled to fair hearings (18 NYCRR 358.4). However, only the latter is entitled to continued assistance, pending the review process (18 NYCRR 358.8 [c] [1]). Were petitioner to apply again, pursuant to the majority's suggestion, and have her application turned down, she and her family would be unsupported, despite their established need. The appeal process can take weeks, months, and, if judicial review is needed, perhaps years. During that period, petitioner and her children would receive nothing. In that event, the safety net promised the poor by our State Constitution and by our Legislature would become valueless..